**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**David Thomas SCHIEMAN,
Defendant–Appellant.**

**No. 89–1782.**

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 25, 1989.

Decided Jan. 31, 1990.

Timothy M. Morrison (argued), Office of the U.S. Atty., Indianapolis, Ind., for plaintiff-appellee.

Allan L. Yackey (argued), Rimstidt, Yackey & Ladd, Indianapolis, Ind., for defendant-appellant.

Before BAUER, Chief Judge,
RIPPLE, and MANION, Circuit Judges.

BAUER, Chief Judge.

A defendant who is convicted of a violation of 18 U.S.C. § 922(g) and has three previous convictions for a violent felony or serious drug offense or both, committed on occasions different from one another, is subject to the penalty enhancement provisions of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). Section 924(e) provides that such a person shall be imprisoned for not less than fifteen years. The

first issue on appeal is the appropriate standard by which to determine whether the defendant has three previous convictions. The second issue is whether two of David Thomas Schieman's previous felony offenses, a burglary and an aggravated battery which occurred on the same evening, meet this standard. The district court determined that Schieman was subject to § 924(e) sentencing. We affirm.

## I.

A federal grand jury sitting in the Southern District of Indiana returned a five count indictment against Schieman. The indictment charged him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) and with being a fugitive in possession of a firearm in violation of 18 U.S.C. § 922(g)(2). The indictment also charged him with assault on a federal officer in violation of 18 U.S.C. § 111, possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d), and possession of a firearm with an obliterated serial number in violation of 26 U.S.C. § 5861(h). A superseding indictment was filed later, adding a sixth count, solicitation of a crime of violence in violation of 18 U.S.C. § 373. The government then notified the court and the defendant that it would seek to have Schieman sentenced pursuant to § 924(e).

Thereafter, Schieman and the government entered into a plea agreement. Schieman agreed to plead guilty to counts 3 and 4, charging violations of 18 U.S.C. §§ 922(g)(1) and (2), and counts 5 and 6, charging violations of 26 U.S.C. §§ 5861(d) and (h). The government agreed to dismiss the count charging solicitation of a crime of violence. (The government had earlier asked the court to dismiss the count charging assault on a federal officer.) The plea agreement also provided that the government would seek to have Schieman sentenced pursuant to 18 U.S.C. § 924(e).

At the sentencing hearing, the government introduced evidence of four previous convictions in order to satisfy the requirements of § 924(e). The court found that a 1980 conviction for conspiracy to commit escape did not satisfy the "violent felony" requirement, but that a 1980 conviction for bank robbery did. Neither of these determinations are at issue on appeal. The government also introduced evidence of two other convictions for offenses which occurred on May 1, 1974. At approximately 2:00 a.m. on May 1, Schieman broke into Jenny's Cake Fair, located at 1518 S. Main St. in Bloomington, Illinois. He stole money from the cash register and fled the scene. Thereafter, he went to Hicksatomic Gas Station, located at 1201 S. Main St. and used the public telephone to call a taxicab. While making the call, he was observed by Officer Ernest Sandell of the Bloomington Police Department who was investigating the burglary. When Sandell approached to question him, Schieman knocked Sandell to the ground and escaped on foot. In the phone booth, Sandell found two brown paper sacks containing $30.50, including two rolls of pennies stamped Jenny's Cake Fair. Schieman was subsequently arrested, tried and found guilty of one count of burglary and one count of aggravated battery. At the sentencing hearing, the government contended that these convictions were two separate convictions for violent felonies and that, together with the 1980 conviction for bank robbery, these convictions made Schieman subject to the penalty enhancement provision of § 924(e). The district court agreed and sentenced him to the custody of the Bureau of Prisons for a term of 15 years on counts 3 and 4, to be served concurrently with the term of 36 months on counts 5 and 6. Schieman then brought this appeal. He first argues that the predicate offenses must be the product of "separate and distinct criminal episodes" in order to count towards the three previous convictions required by § 924(e). He next contends that his convictions for burglary and aggravated battery were the product of just one criminal episode and thus that he was improperly sentenced under § 924(e).

## II.

In order to be subject to the enhanced penalty provisions of ACCA, a defendant must have three previous convictions for any violent felony or serious drug offense

committed on occasions different from one another. 18 U.S.C. § 924(e).[1] The first issue on appeal is the appropriate standard by which to determine whether the defendant has the three requisite convictions. There are two possibilities.[2] Most courts have held that a defendant is subject to the enhanced penalty, regardless of the number of adjudications, as long as each conviction arises out of a separate and distinct criminal episode. *See, e.g., United States v. Pedigo,* 879 F.2d 1315 (6th Cir.1989), *United States v. Towne,* 870 F.2d 880 (2nd Cir.1989), *United States v. Herbert,* 860 F.2d 620 (5th Cir.1988), *United States v. Gillies,* 851 F.2d 492 (1st Cir.1988), *United States v. Rush,* 840 F.2d 580 (8th Cir.1988), *United States v. Wicks,* 833 F.2d 192 (9th Cir.1987), *United States v. Greene,* 810 F.2d 999 (11th Cir.1986). In adopting. this standard, the First Circuit in *Herbert* stated:

> The Supreme Court in *Petty,* faced with a similar issue, concluded that multiple convictions must be treated as one conviction for § 1202(a) purposes if the convictions arose from a single criminal transaction. The negative implication of this holding is that multiple convictions arising from multiple criminal transactions should be treated as separate convictions, regardless of the number of judicial proceedings involved in the conviction. To hold otherwise would be to create a situation in which the state, by electing to consolidate or not to consolidate charges based on separate transactions, could maneuver a defendant into

or out-of the Armed Career Criminal status.

*Herbert,* 860 F.2d at 622.

The Third Circuit, however, has held that each criminal episode must be adjudicated separately to count towards the three convictions required by the statute. *United States v. Balascsak,* 873 F.2d 673 (3rd Cir. 1989) (en banc). In *Balascsak,* the district court sentenced the defendant according to § 1202(a) based upon a finding that two burglaries committed one block apart on the night of July 10–11, 1981 (the first occurred at 10:45 p.m., and the second sometime between 11:00 p.m. and 7:00 a.m.) and adjudicated together counted as two convictions. Six members of the en banc court held that the ACCA did not intend that such jointly tried offenses count toward the three predicate offenses. Rather, the statute was aimed at

> [Those] people who have demonstrated, by virtue of their definition, that locking them up and letting them go doesn't do any good. They go on again, you lock them up, you let them go, it doesn't do any good, they are back for a third time. At that juncture we should say, 'That's it; time out; it is all over. We, as responsible people, will never give you the opportunity to do this again.'

*Id.* at 682 (*quoting* Testimony of Stephen Trott, Assistant Attorney General, Criminal Division, *reprinted in Armed Career Criminal Act: Hearing on H.R. 1627 and S. 52 Before the Subcomm. on Crime of the House Comm. on the Judiciary,* 98th Cong., 2d Sess. 6, 64 (1984)). To the "sepa-

---

**1.** The original ACCA appeared at 18 U.S.C. § 1202(a)(1) (Supp.1984). Thus some of the decisions cited in this opinion will refer to § 1202(a) rather than § 924(e).

**2.** Prior to the 1988 amendment to the statute, which added the language "committed on occasions different from one another," there was a third possibility, evidenced by the Eighth Circuit's decision in *United States v. Petty,* 798 F.2d 1157 (8th Cir.1986), *vacated,* 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987), *on remand,* 828 F.2d 2 (1988). In *Petty,* the court imposed the enhanced sentence upon a defendant who had previously been convicted of six counts of armed robbery arising from an incident in which the defendant simultaneously robbed six patrons of a restaurant. In response to Petty's

petition for writ of certiorari, the Solicitor General confessed error, stating "[W]e believe that the underlying purpose of the statute and the intent of Congress ... indicate that the court of appeals was in error in construing the statute to reach multiple felony convictions arising out of a single criminal episode." (Brief at 29–30). The Supreme Court granted Petty's petition with respect to this issue and remanded to the court of appeals for reconsideration. 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810. On remand, the court vacated the enhanced sentence and adopted the view of the Solicitor General that the "statute was intended to reach multiple criminal episodes that were distinct in time." *Petty,* 828 F.2d at 3.

rate and distinct criminal episode" test employed by the other circuits, the six judges of the panel thus grafted on the requirement that each criminal episode must be punctuated by its own adjudication in order to count as a separate conviction.

Five judges vigorously disagreed, however, with the majority's assessment of the statute, and argued in dissent that "Congress's concern in enacting the enhanced penalty provision at issue in this case was with those criminals involved in repeated criminal episodes, with or without intervening efforts at rehabilitation." *Balascsak*, 873 F.2d at 688. The dissent cited the repeated statements in the legislative history that criminals are caught and convicted for fewer crimes than they actually commit, *see, e.g.*, S.Rep. No. 585, 97th Cong., 2d Sess. 3, 21, 72 (1982), S.Rep. No. 190, 98th Cong., 1st Sess. 1, 5 (1983), which suggested that

> Congress's overriding concern with the fact that once a person has three previous convictions for the offenses specified in the Act, he or she is quite likely to be a member of that 'small number of repeat offenders [who] commit a highly disproportionate amount of the violent crime plaguing America today,' S.Rep. No. 585 at 20, regardless of any intervening convictions.

*Balascsak*, 873 F.2d at 688. The dissent thus advocated the adoption of the "separate and distinct criminal episode" test and would have sentenced Balascsak under § 924(e).

Prior to this appeal, this circuit has not had the opportunity to address the appropriate standard under which to determine whether the defendant has three previous convictions for the purposes of § 924(e). We now adopt the reasoning of the dissent in *Balascsak* and the majority of other circuits which have faced this question.[3] We think that this answer is clear after the most recent amendment to § 924(e), which clarified any previous ambiguity in the statutory language. See Anti–Drug Abuse Act of 1988, Pub.L. 100–690, § 7056, 102 Stat. 4181, 4402 (1988).[4] The statute now reads:

> In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony of a serious drug offense, or both, *committed on occasions different from one another*, such person shall be fined not more than $25,000 and imprisoned not less than 15 years ...

18 U.S.C. § 924(e) (1988) (emphasis added). This is the same language used in two other penalty enhancement provisions, 18 U.S.C. § 3575(e)(1) (repealed effective Nov. 1, 1987) and 21 U.S.C. § 849(e)(1) (repealed effective Nov. 1, 1987), neither of which required that the predicate offenses be adjudicated separately to count towards the three convictions required by the statute. See *Balascsak*, 873 F.2d at 686 n. 2. Although it is unnecessary to look to the legislative history when the statutory language is unambiguous, we also agree with those circuits which have examined the legislative history and concluded that the ACCA was aimed at repeat offenders regardless of the number of intervening convictions. *See, e.g. Wicks*, 833 F.2d at 194, *Herbert*, 860 F.2d at 622.

---

**3.** It appears that the viability of the plurality opinion in *Balascsak* is in question after the Third Circuit's most recent decision on this issue. In *United States v. Schoolcraft*, 879 F.2d 64 (3rd Cir.1989), a per curiam court adopted the "separate and distinct criminal episode" test of the dissent in *Balascsak*. (Judge Scirica, however, dissented from the decision.) The *Schoolcraft* court found that it was not bound by the decision in *Balascsak* because of the alignment of votes. Six members of the court required intervening convictions in order to apply the ACCA. A seventh concurred in the result: he adopted the dissent's "separate and distinct" test,

but found it was not met in this case. The remaining five judges adopted the "separate and distinct" test and found that it was satisfied by the facts of the offenses. After noting that it was not bound by the plurality opinion, the *Schoolcraft* court adopted the dissent's analysis in *Balascsak*.

**4.** Some circuits had found the original statutory language ambiguous and had looked to the legislative history for clarification. *See, e.g., United States v. Herbert*, 860 F.2d at 622.

■ For the reasons stated above, we follow the reasoning of the majority of circuits and adopt the "separate and distinct criminal episode" test to determine whether a defendant is subject to the enhanced penalty provision of § 924(e).

### III.

Schieman contends that the district court erred by finding that the offenses of which he was convicted were the product of separate and distinct criminal episodes. He argues that the offense of aggravated battery was simply a continuation of the burglary offense and therefore that these two offenses cannot be counted separately. We disagree.

■ In this case, Schieman had successfully completed the burglary of Jenny's Cake Fair and safely escaped from the premises before committing the subsequent offense. *See United States v. Wicks,* 833 F.2d 192 (two burglaries committed the same night in different locations counted as two predicate offenses for § 924(e) sentencing). He was three blocks away from the store when Officer Sandell approached him. To consider the aggravated battery offense a continuation of the burglary offense would preclude from § 924(e) consideration any offense which is designed to prevent detection of the original crime. Had Officer Sandell questioned Schieman about this robbery the following day, or three weeks later, Schieman's attack undoubtedly would be considered a separate and distinct episode. Once the original crime is complete, there is no principled way to distinguish between an attack in response to an investigation commenced within ten minutes of the burglary and an attack in response to an investigation commenced a day after the burglary. To make a distinction in this situation would grant the criminal an unintended windfall for the quick detection of his crime. This we decline to do.

Because Schieman "committed separate crimes against separate victims in separate locations," *United States v. Towne,* 870 F.2d at 891 (*citing Wicks,* 833 F.2d at 193; *Greene,* 810 F.2d at 1000), we find that Schieman's offenses of burglary and aggravated battery should count as two separate convictions for § 924(e) sentencing purposes. These two convictions, together with the 1980 conviction for bank robbery, make him subject to § 924(e). The decision of the district court is therefore affirmed.

RIPPLE, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority's conclusion that the "separate and distinct criminal episode" test is the appropriate analysis to determine the applicability of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). However, I respectfully disagree that this analysis, when applied to the facts of this case, justifies the enhancement of Mr. Schieman's sentence. My brothers conclude that Mr. Schieman is liable under 18 U.S.C. § 924(e) because he was convicted of having committed two crimes on the same evening. However, it is clear that the two incidents were in reality part of a single criminal episode: Mr. Schieman committed a robbery, walked three blocks away to make a telephone call to arrange transportation away from the scene, and, in an attempt to evade apprehension, pushed a police officer at the phone booth. The pushing incident occurred approximately five minutes after the robbery.

In an attempt to justify its characterization of this event as two separate criminal episodes, the majority states that "[o]nce the original crime is complete, there is no principled way to distinguish between an attack in response to an investigation commenced within ten minutes of the burglary and an attack in response to an investigation commenced a day after the burglary." *Ante* at 913. This rationale ought not stand for two reasons. First, it is contrary to the express intent of Congress. Secondly, the analytical methodology necessary to make such a "principled" distinction is well-established in our criminal law.

### A

The legislative intent with respect to this section is certainly no mystery. Indeed,

the executive branch, responsible for the enforcement of federal criminal statutes, has acknowledged the congressional mandate and, at least on a national level, attempted to remain faithful to it. During the 1984 legislative hearings, then Assistant Attorney General Stephen S. Trott described the Armed Career Criminal Act as aimed at persons who, having already been involved in a serious criminal episode, *return* to such antisocial behavior:

> These are people who have demonstrated, by virtue of their definition, that locking them up and letting them go doesn't do any good. They go on again, you lock them up, you let them go, it doesn't do any good, they are back for a third time. At that juncture, we should say, "That's it; time out; it is all over. We, as responsible people, will never give you the opportunity to do this again."

*Armed Career Criminal Act,* Hearing Before the Subcomm. on Crime of the House Comm. on the Judiciary, 98th Cong., 2d Sess. 64 (1984) (quoted in Brief of Solicitor General at 8–9, *Petty v. United States,* 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987)). In similar fashion, in a brief submitted to the Supreme Court in *Petty v. United States,* 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987), the Solicitor General examined the legislative history of the statute:

> [R]eferences throughout the legislative reports and the floor debates to "career criminals," "repeat offenders," "habitual offenders," "recidivists," "revolving door" offenders, "three time loser," "third-time offender," "[defendants] convicted three times," and to defendants committing a "third or subsequent robbery," are inconsistent with the notion that Congress intended [the statute], unlike in other federal enhanced penalty provisions, to count previous convictions

on multiple felony counts arising from a single criminal episode as multiple "previous convictions."

*Id.* at 7.

Our colleagues in other circuits have recognized this congressional mandate and have been scrupulous in observing the congressional limitations on the scope of this potent enhancement provision. *See, e.g., United States v. Pedigo,* 879 F.2d 1315 (6th Cir.1989) (remanding for a determination as to whether the predicate convictions constituted requisite number of criminal episodes). Even when dealing with situations that more clearly fall within the scope of the statute, they have carefully differentiated those situations from the type before us now.[1] Certainly the two cases cited by the majority hardly support its conclusion that Mr. Schieman's actions on the night of May 1, 1974 must be considered as separate episodes. Indeed, in *United States v. Towne,* 870 F.2d 880 (2d Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989), the court determined that two incidents, which together resulted in four felony convictions of kidnapping and rape, constituted *two* prior episodes, not four. *Id.* at 891. After examining the legislative history of section 924(e), the court concluded:

> It seems quite clear that this section of the Act was intended to target recidivists, *i.e.,* those who have engaged in violent criminal activity on at least three separate occasions, and not individuals who happen to acquire three convictions as a result of a single criminal episode (or, as here, two such criminal events).

*Id.* at 891. In the second case cited by the majority, *United States v. Wicks,* 833 F.2d 192 (9th Cir.1987), *cert. denied,* —— U.S. ——, 109 S.Ct. 87, 102 L.Ed.2d 63 (1988), the defendant had committed two burgla-

---

1. *See United States v. Taylor,* 882 F.2d 1018, 1028–29 (6th Cir.1989) (determining whether acts constitute a single "crime spree" is a difficult question; not presented in that case, since burglaries committed in different months); *United States v. Herbert,* 860 F.2d 620, 622 n. 1 (5th Cir.1988) (not addressing issue of "whether multiple convictions for crimes committed over a period of days or hours as part of a criminal

spree constitute single or multiple criminal transactions"), *cert. denied,* —— U.S. ——, 109 S.Ct. 2074, 104 L.Ed.2d 639 (1989); *United States v. Gillies,* 851 F.2d 492, 497 (1st Cir.) (sufficient predicate convictions even if two burglaries on same night treated as single episode), *cert. denied,* —— U.S. ——, 109 S.Ct. 147, 102 L.Ed.2d 119 (1988).

ries on the same night. However, the crimes were separate and distinct. They occurred at different locations. One was not the continuation of the other. By contrast, here the crimes were committed as part of the same operation or episode—a burglary and the immediate escape. The crimes do not meet the rigorous standard that should be met for determining separate criminal episodes. *See United States v. Balascsak*, 873 F.2d 673, 684 (3d Cir. 1989) (en banc) ("I believe that the separate criminal episode requirement must be read rigorously and that we must insist that the government prove convincingly that the crimes (and the episodes of which they were part) were truly separate.") (Becker, J., concurring).

### B

The majority's suggestion that no principled distinction is possible between a crime committed to elude detection within ten minutes of the original crime and one committed a day later ignores the fact that similar distinctions are made often in our criminal law. For instance, the same type of determination is made in the case of felony-murder. Under Indiana law, a homicide committed during the asportation of stolen property is considered to occur within one continuous transaction. *Eddy v. State*, 496 N.E.2d 24, 28 (Ind.1986). "A transaction is continuous when the commission of both the homicide and felony are closely connected in time, place, and continuity of action." *Sheckles v. State*, 501 N.E.2d 1053, 1056 (Ind.1986). Certainly, ever since *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), "[t]his circuit has followed the Supreme Court's admonition and has required that the government prove 'continuity plus relationship' in order to show a pattern [of racketeering activity] for purposes of RICO." *United States v. Muskovsky*, 863 F.2d 1319, 1329 (7th Cir. 1988), *cert. denied,* — U.S. ——, 109 S.Ct. 1345, 103 L.Ed.2d 813 (1989). *See also United States v. Horak*, 833 F.2d 1235, 1240 (7th Cir.1987). There is no reason why the same sort of assessment cannot be made here. The congressional intent is

clear: the enhancement is to apply to the person who turns anew to criminal activity after an earlier and completed episode. The factual assessment necessary to implement that legislative intent is the traditional fare of the judicial process. It is hardly an impossible task.

Today's holding places this circuit well outside the mainstream of judicial interpretation on this issue. This penalty enhancement provision is an important tool in the maintenance of a peaceful society. There is no more certain way to weaken it than to stretch it beyond recognition.