**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert R. WHITE, Defendant–Appellant.**

**No. 92–3173.**

United States Court of Appeals,
Seventh Circuit.

Argued April 9, 1993.

Decided June 24, 1993.

Christopher W. Dysart (argued), Office of the U.S. Atty., Crim. Div., Fairview Heights, IL, for plaintiff-appellee.

George Ripplinger (argued), Ripplinger, Dixon & Johnston, Belleville, IL, for defendant-appellant.

Before BAUER, Chief Judge, POSNER, and ROVNER, Circuit Judges.

BAUER, Chief Judge.

Robert R. White was convicted of unlawful possession of a firearm as a convicted felon in violation of 18 U.S.C. § 922(g)(1). Pursuant to the Armed Career Criminal Act, 18 U.S.C. § 924(e) and the United States Sentencing Guidelines ("U.S.S.G." or "Guidelines"), the district court sentenced White to 192 months in prison. White appeals his sentence. We affirm.

I.

On April 8, 1992, Robert White pleaded guilty to a one-count indictment that charged him with being a felon in possession of a firearm. At White's sentencing hearing, the district court adopted without objection the factual findings of the Presentence Report ("PSR"). Sentencing Hearing Transcript at 2. The PSR indicates that White has a long history of criminal activity. White's criminal career began at least as early as the mid–1960s when, in 1967, he pleaded guilty to assault and battery with a dangerous weapon in Norfolk County, Massachusetts. PSR at 5. For this offense, White was imprisoned until September 1971, when he was paroled. In 1972, White was convicted of armed robbery in Plymouth County, Massachusetts and sent back to prison. *Id.* During 1975, while he was out of prison on parole, White went to California. A model of consistency, White continued his criminal career there. He returned to prison in 1977 after he pleaded guilty to five counts of burglary in Contra Costa County, California. *Id.*

White ran into trouble with the law again in 1988 when he was arrested in Davie, Florida and charged with reckless driving, theft, and theft by taking. *Id.* at 6. White told the police that he stole a student's wallet to support his crack cocaine habit. *Id.* He also

admitted that he had stolen a second wallet which belonged to another student. White served 64 days in jail for this offense. *Id.* In July 1989, White was arrested in Volusia County, Florida with thirty-three credit cards that he had stolen from sixteen people. White entered a plea of *nolo contendere* to charges that he dealt in stolen credit cards and trafficked in counterfeit credit cards. *Id.* The Florida court sentenced him to 4½ years in prison to be followed by 7 years probation. *Id.* The court also ordered White to pay restitution. On October 22, 1990, he was released on probation. White was arrested for the instant offense on April 7, 1991. Record Document ("R.Doc.") 1.

In sentencing White, the district court considered White's prior criminal offenses, noted that he committed the present offense in violation of his Florida probation, and concluded that he was a career criminal as defined by section 924(e) and the Guidelines. All things considered, this was a very reasonable conclusion. A second career would have been hard to squeeze in, what with serving time and all. *See* U.S.S.G. §§ 4A1.1 and 4A1.2(e). The district court therefore enhanced White's sentence.

## II.

Under section 924(e), any person who violates section 922(g) and has three previous violent felony or serious drug offense convictions must receive a prison sentence of at least fifteen years.[1] In this case, the district court satisfied that requirement by sentencing White, pursuant to the Guidelines, to 192 months—a longer term than section 924(e)'s fifteen year-minimum requirement. On ap-

peal, White contends that two of his previous convictions do not qualify as violent felonies for purposes of section 924(e).

White makes three arguments. First, he contends that the district court erred by counting his 1967 guilty plea for assault and battery with a dangerous weapon. White claims his 1967 conviction could not be counted because the Massachusetts trial judge did not properly warn him that he waived certain rights by pleading guilty. Appellant's Brief at 11–13. White's second and third arguments challenge the district court's treatment of his 1977 burglary convictions. White contends that the district court should not have counted his burglary convictions because they were not burglaries for purposes of section 924(e)(2)(B). *Id.* at 7. Finally, White argues that the district court erred by treating his guilty plea to five counts of burglary as five separate previous violent felony convictions for purposes of enhancing his sentence. *Id.* at 9–11. We will consider each argument in turn.

### A. *Standard of Review*

White's claims that the district court erred by using two of his prior convictions to enhance his sentence under section 924(e) involve questions of law that we review *de novo*. We review factual matters that relate to White's prior convictions for clear error.

### B. *White's 1967 Assault and Battery Conviction*

■ White argues that the Supreme Court's decision in *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274

---

1. As pertinent here, section 924(e) states:
   (e)(1) In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, committed on occasions different from one another, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

(2) As used in this subsection—

\* \* \* \* \* \*

   (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year ... that—
   (i) has an element the use, attempted use, or threatened use of physical force against the person of another; or
   (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another....
18 U.S.C. § 924(e).

(1969), renders his 1967 assault and battery conviction constitutionally infirm. *Boykin* held that a conviction obtained by confession will be reversed if the record in the case does not disclose that the criminal defendant voluntarily and understandingly entered his guilty plea. *Id.* at 242, 89 S.Ct. at 1711. Specifically, White claims that his 1967 guilty plea does not meet the *Boykin* standard and that he should not be punished further for a conviction that would not withstand scrutiny today. White's *Boykin* argument is a dead loser.

■ As an initial matter, *Boykin*'s requirements do not apply to White's 1967 plea. *Boykin* sets the standard only for pleas entered after June 2, 1969, the date the Supreme Court decided *Boykin. United States v. DeForest,* 946 F.2d 523, 525 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1235, 117 L.Ed.2d 469 (1992). We judge White's 1967 guilty plea for the crime of assault and battery by the standards applicable during 1967. *United States v. Gallman,* 907 F.2d 639, 642 n. 3 (7th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1110, 113 L.Ed.2d 219 (1991). Under those standards, White's guilty plea is valid if White entered his plea voluntarily and with full understanding of the nature of the charges made in the indictment, his available defenses, and the nature and consequences of his plea. *DeForest,* 946 F.2d at 525.

The March 1, 1967 transcript of White's plea hearing shows that the pre-*Boykin* standards were satisfied. At the hearing, the court went to great lengths to make sure that White understood the charges against him. In fact, after White initially offered his guilty plea, the court specifically questioned White to determine whether he understood (1) the nature of the charges against him and (2) that his guilty plea gave the court the authority to sentence him. The court also made certain that no one had made any promises or inducements to persuade White to plead guilty.[2] Later, the court questioned White a second time. That court's second series of questions included the following exchange:

Q. [by the court] I just want to ask you a few questions. As I understand it, you are asking the Court to accept your plea of guilty to this charge we talked about before. Will you tell me briefly what it is you are pleading guilty to?

A. I don't understand what you mean by that.

Q. You pleaded guilty to a crime here?

A. Yes, sir.

Q. Will you tell me what you did? What do you understand you are pleading guilty to? I don't mean the legal description, I mean the facts.

A. In other words, you want me to go over what happened?

Q. Yes.

\* \* \* \* \* \*

The COURT. My purpose is only to protect everybody's interest and not excluding that of the defendant. With a serious problem like this, I have to make certain that what the defendant has pleaded guilty to is the same in his mind as it is in the minds of the Court and the lawyers.

\* \* \* \* \* \*

Q. [by the court] Mr. White, rather than have you narrate a lot of things that may not be particularly material, did you go to the gas station in Walpole on October 5 and shoot Edward N. Pearl?

\* \* \* \* \* \*

A. Yes.

\* \* \* \* \* \*

Q. Have any promises been given you, or any assurances or any inducements, in order to get you to plead guilty?

A. No, sir.

Q. You understand on your plea of guilty, this Court may pass sentence upon you?

A. Yes.

Transcript of Disposition on Pleas of Guilty in Case of Commonwealth v. White, Dedham, Massachusetts, March 1, 1967 ("1967 Tr.") at 4–5.

---

**2.** For example, the transcript reveals that the court asked White the following questions:

Q. Mr. White, do you have a lawyer, Mr. Fandel?

A. Yes, sir.

Q. He has explained to you the nature of the charges against you?

A. Yes, sir.

Q. You understand them?

A. Yes, sir.

Q. Understanding them, you have voluntarily elected to plead guilty.

A. The WITNESS. Yes. The shooting happened while I was there.

Q. Did you pull the trigger on the gun that shot Edward Pearl?

A. As the word "pull the trigger," no, sir, the gun had a hair trigger on it and I was extremely nervous at the time and I gripped the gun with my left hand and I brought the gun to my side, which was in roughly the same area. I had not pointed the gun. I brought it to my side and, when I did, when I swung it up, my finger hit the trigger and it went off. Had it been a regular trigger instead of a hair trigger, the gun would not have went off.

\* \* \* \* \* \*

Q. When the shooting took place, was it your intent to steal money at the gas station?

A. My intention was to take the money, yes.

Q. What was your intention with respect to the use of the gun? Was it a holdup?

A. Yes, sir, I would call it that, yes.

1967 Tr. at 12–16. This transcript clearly demonstrates that the court made sure that White voluntarily pleaded guilty, that he fully understood the nature of the charges, and that he understood the consequences of his guilty plea.

White bears the burden of proving that his guilty plea does not satisfy constitutional standards. *United States v. Ferguson*, 935 F.2d 862, 867 (7th Cir.1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 907, 116 L.Ed.2d 807 (1992). He has merely alleged that his 1967 guilty plea is constitutionally deficient because the trial court did not properly warn him about the consequences of the plea. As the transcript of his plea hearing shows, the court did warn him. White has failed to satisfy his burden.

C. *White's 1977 California Burglary Convictions as Previous Violent Felonies for Purposes of Section 924(e)*

■ White claims that his 1977 California burglary convictions should not count for

sentence enhancement because of the Supreme Court's decision in *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990). In that case, the Court defined the word "burglary" for purposes of section 924(e). The Court noted that the various states define burglary differently and concluded that the burglary referred to in section 924(e) must have a uniform meaning independent of the states' criminal codes. *Id.* at 592, 110 S.Ct. at 2155. The Court held that section 924(e) burglary meant "generic burglary," which the court described as "any crime, regardless of its exact definition or label, having the basic elements of unlawful or unprivileged entry into, or remaining in, a building or structure, with intent to commit a crime." *Id.* at 599, 110 S.Ct. at 599. If either the statute under which the defendant was convicted or the charging papers and jury instructions show that the defendant actually committed generic burglary, then section 924(e) is satisfied and the conviction can be used for section 924(e) enhancement purposes.[3] *Id.* at 602, 110 S.Ct. at 2160. *See also, Gallman*, 907 F.2d at 645 (although burglary statute at issue was broader than *Taylor*'s definition of generic burglary, the record showed that defendant was convicted of generic burglary; therefore conviction counted for section 924(e) enhancement).

■ White points out that *Taylor* described the California burglary statute as broader than the Court's definition of generic burglary. *See Taylor*, 495 U.S. at 591, 110 S.Ct. at 2154. White claims that his California burglary convictions therefore should not count for section 924(e) enhancement. He also argues that a preliminary hearing transcript from the 1977 prosecution indicates that the crimes he pleaded guilty to were not generic burglaries as defined by *Taylor*. White's argument fails on both points.

Pursuant to *Taylor*'s directive, we look first at the charging paper—here, the information—that charged White with the 1977 burglaries. White entered guilty pleas on

---

**3.** Even if enhancement under section 924(e) is not available, *Taylor* indicates that, pursuant to the Guidelines, a district court may still enhance a criminal defendant's sentence for a § 922(g)(1) violation. *Taylor*, 495 U.S. at 602 n. 10, 110 S.Ct. at 2160 n. 10.

five of the twelve counts in the information—counts three, four, seven, eight, and ten. Each of them satisfies *Taylor*'s definition of generic burglary. Count three, for example, charges that White "unlawfully, wilfully and feloniously enter[ed] the room of Kathie Martin ... with the intent to commit theft." Attachment B to R.Doc. at 77. Counts four, seven, eight, and ten use identical language and differ only in the dates, names of the victims, and the addresses listed.

White claims that the transcript of the preliminary hearing in the 1977 prosecution demonstrates that White's conduct was not burglary as defined by *Taylor* because he did not unlawfully enter or remain in these buildings. Although the information in the case shows otherwise—and satisfies *Taylor*—we accept White's invitation and examine the preliminary hearing transcript. The testimony from that hearing makes clear that White committed generic burglary. For example, Donna Luskan, the victim named in count four of the information, testified at the preliminary hearing as follows:

BY MR. CAMPBELL [a deputy district attorney]:

Q. Mrs. Luxon [sic], on February 24th, 1977, approximately 11:45, where were you?

A. In my office.

Q. Would you give us the address of your office, please?

A. 1501 North Broadway, Suite 302, Walnut Creek.

Q. Is that a business?

A. Yes, it is the City Attorney's office.

Q. Did anything unusual occur?

A. Yes, it did.

Q. About that time and place?

A. Yes.

Q. What was that?

A. I came out from the back office from taking dictation from the City Attorney, and I reached down to get my purse and it was gone.

Q. Where had you left your purse? Where had you last seen it?

A. Down at the right of my desk where the legs go.

Q. That's in your office?

A. Yes.

\* \* \* \* \* \*

Q. You gave permission to no one to enter or take anything, I take it?

A. No, I did not.

Transcript of Preliminary Hearing in *People v. White*, County of Contra Costa, California, June 23 & 28, 1977 at 57–58, 60. Geraldine Breault, the victim named in count eight, testified that White stole her purse from her office, a room she described as "a very closed kind of place. You don't see people coming in and out." *Id.* at 23. The testimony of Luskan and Breault, together with that of the other victims, suggests only one conclusion: White entered places where he had no lawful or privileged right of access, intended to commit crimes, and, in fact, did commit crimes. White points to nothing in the preliminary hearing transcript that supports his bald assertion that he was in a place which was open to the public when he committed the five crimes to which he pleaded guilty. The testimony of Luskan and Breault refutes this assertion. We conclude, therefore, that *Taylor* is satisfied and that the district court properly counted White's 1977 burglary convictions for purposes of sentence enhancement.

*D. 1977 California Burglary Convictions as Five Separate Violent Felony Convictions*

White finally argues that his 1977 guilty plea to five counts of burglary should be treated as one previous violent felony conviction, not five previous felony convictions. This argument also fails. First of all, White mistakenly relies on *United States v. Balascsak,* 873 F.2d 673 (3d Cir.1989), *cert. denied,* 498 U.S. 864, 111 S.Ct. 173, 112 L.Ed.2d 138 (1990), where the court held that each criminal act must be adjudicated separately to count towards the three prior convictions required by section 924(e). We have explicitly rejected *Balascsak's* separate adjudication approach, *United States v. Schieman,* 894 F.2d 909 (7th Cir.1990), and instead apply the separate and distinct criminal episode test to determine whether White's 1977

convictions are subject to section 924(e) enhancement. *Id.* at 913.

In *Schieman*, for example, the defendant broke into and stole money from Jenny's Cake Fair in Bloomington, Illinois. A short time later and a mere three blocks away, the defendant knocked a police officer to the ground and fled. *Id.* at 910. For these two actions, the defendant was convicted of one count of burglary and one count of aggravated battery. *Id.* When the defendant was later convicted for violating section 922(g)(1), the district court counted the burglary and aggravated battery convictions as two prior violent felonies for purposes of section 924(e). On appeal, we endorsed the separate and distinct criminal episode test, applied that test to the defendant's burglary and aggravated battery convictions, and concluded that the defendant had "'committed separate crimes against separate victims in separate locations.'" *Id.* at 913 (quoting *United States v. Towne*, 870 F.2d 880, 891 (2d Cir. 1989), *cert. denied*, 490 U.S. 1101, 109 S.Ct. 2456, 104 L.Ed.2d 1010 (1989)). We held that these two convictions, along with a prior bank robbery conviction, satisfied section 924(e)'s three prior violent felony convictions requirement. Accordingly, we affirmed the defendant's sentence. *Id.*

In this case, White's 1977 burglary convictions present a stronger case for enhancement than the burglary and aggravated battery convictions at issue in *Schieman*. Both the information that charged White with the burglaries and the preliminary hearing transcript show that White's five burglary convictions were separate and distinct episodes. White committed all five burglaries against five different victims at five different locations on four different dates. These easily satisfy *Schieman*'s separate and distinct criminal episode test.

A second reason White's argument fails is because he misunderstands the district court's treatment of his 1977 burglary convictions. The information filed by the government treated the 1977 convictions as one criminal offense. R.Doc. 24. The PSR reveals that White's sentence was computed pursuant to U.S.S.G. § 4A1.1(a) as if the burglary convictions were one prior criminal conviction. White points to nothing in the record that suggests otherwise, that is, that suggests that the district court treated his convictions as five prior offenses. Our review of the record leads us to conclude that the district court treated White's five burglary convictions as one prior offense for sentence enhancement purposes.

### III.

Robert R. White has chosen to live a life of crime. Congress enacted the Armed Career Criminals Act to protect the public from the repeated episodes of violence that people like White inflict against American society. It is unfortunate, even tragic, both for White and, especially, for the victims of his crimes, that White decided to live his life the way he has. The choices he made were his alone, however, and he must now live with the consequences of those choices. The decision of the district court sentencing White as an armed career criminal to a prison sentence of 192 months is

AFFIRMED.