United States Court of Appeals,

Eleventh Circuit.

No. 96-8844

Non-Argument Calendar.

UNITED STATES of America, Plaintiff-Appellee, Cross-Appellant,

v.

Clifford Kelly POPE, Defendant-Appellant, Cross-Appellee.

Jan. 9, 1998.

Appeals from the United States District Court for the Middle District of Georgia. (No. 5:95-CR-38-001-DF), Duross Fitzpatrick, Judge.

Before COX, DUBINA and CARNES, Circuit Judges.

CARNES, Circuit Judge:

Defendant Clifford Kelly Pope appeals his conviction on three weapons charges: (1) possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d); (2) possession of a firearm with an obliterated serial number in violation of 26 U.S.C. § 5861(h); and (3) possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1). For each of these violations, Pope was sentenced to concurrent terms of eighty-seven months of imprisonment. The government cross-appeals Pope's sentence, contending that the district court erred in not sentencing Kelly to a mandatory minimum prison sentence of fifteen years as required by the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). We conclude that Kelly's contentions are without merit, and that the district court erred by failing to sentence him to a minimum of fifteen years in prison as the ACCA requires. Consequently, we affirm Kelly's convictions on all counts, but vacate his sentence and remand the case for resentencing.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Until their divorce on March 14, 1992, Clifford Kelly Pope (Pope) was married to Phyllis Pope (Phyllis). During their marriage, the couple obtained a Mustang Ranger Pickup that was secured by a loan with First Liberty Bank. For much of the time after the divorce but before Pope's October 7, 1994 arrest, he drove the Mustang. At some time during or after July, 1994, the Popes defaulted on their loan on the Mustang. Because First Liberty collection manager Ronald Williamson did not know who had possession of the Mustang, he contacted Phyllis to notify her of the bank's intent to repossess the vehicle. Although Phyllis did not have the car at the time, she told Williamson that the bank could repossess the car on October 7, 1994.

On October 7, 1994, Phyllis arranged separately to meet both Pope and Williams in the parking lot of a Kroger grocery store. Phyllis arrived in an Explorer; Pope arrived later in the Mustang. Pope then got into the Explorer with Phyllis and drove away. At that point, Williamson, who was parked at the other end of the lot, exited his car. Philip Newell, who was assisting Williamson, went into the grocery store where he asked off-duty Bibb County Police Deputy DeFoe to assist with the repossession. DeFoe called for police backup; he, Williamson, and Newell then went over to the Mustang. Inside the Mustang, the men found a sawed-off shotgun, a rifle, and ammunition for both weapons. Shortly thereafter, Pope and Phyllis returned in the Explorer. The police arrested both of them. A search of the Explorer uncovered a pistol. At that time, Phyllis also gave the police two audiotapes of conversations that she had with Pope in which he made incriminating statements as well as several photographs of Pope with the sawed-off shotgun and rifle in his possession.

On June 22, 1995, Pope was indicted for possession of an unregistered firearm, possession of a firearm with an obliterated serial number, and possession of a firearm by a convicted felon. Before trial, Pope moved to suppress audio tapes that Phyllis had made of their conversations; the

district court denied Pope's motion and allowed the jury to hear the tapes. After a three-day trial, a jury found Pope guilty on all three weapons charges. Pope moved for a new trial, and the district court denied his motion.

Following Pope's conviction, the Probation Office issued a Presentence Investigation Report which characterized him as a career criminal. In addition to several other offenses which are not relevant here, the report noted that Pope had an April 3, 1984 conviction for burglary and two December 1, 1975 convictions for burglary. Based on those three convictions, the Government argued that the court was required to sentence Pope under the Armed Career Criminal Act, 18 U.S.C. § 924(e), which mandates a minimum fifteen-year prison term for an offender, previously convicted of three violent or drug offenses, who is convicted of illegally possessing a firearm. However, the district court concluded that because the two December 1, 1975 burglaries occurred in close physical and temporal proximity with one another, they could not be counted as separate predicate convictions under the ACCA. Thinking that it was not bound by the ACCA, the district court sentenced Pope to eighty-seven months in prison, the upper boundary of Pope's non-enhanced guideline range.

Pope filed a notice of appeal challenging his conviction. The Government filed a notice of cross-appeal, contending that the court had erred in not sentencing Pope under the ACCA.

## II. POPE'S APPEAL OF HIS CONVICTION

A. THE COURT'S EXCLUSION OF PHYLLIS' PREVIOUS CONVICTION

Pope's first contention is that the district court erred in not permitting him to question Phyllis Pope about her 1968 burglary conviction. We review a district court's decision to exclude evidence only for abuse of discretion. *See United States v. Van Dorn,* 925 F.2d 1331, 1335 (11th Cir.1991).

At trial, Pope sought to introduce evidence of Phyllis' 1968 burglary conviction. Federal

Rule of Evidence 609(b) creates a strong presumption against the use for impeachment purposes of stale convictions, such as this one, which was twenty-eight years old at the time of this trial. When a conviction is more than ten years old, it is not admissible unless the district court determines that its probative value substantially outweighs its prejudicial effect. *See* Fed.R.Evid. 609(b); *United States v. Pritchard,* 973 F.2d 905, 908 (11th Cir.1992); *see also United States v. Tisdale,* 817 F.2d 1552, 1555 (11th Cir.1987) (holding that convictions older than ten years should be admitted for impeachment purposes only very rarely). Given the facts of this case, it was not an abuse of discretion for the district court to conclude that the probative value of Phyllis's 1968 conviction did not substantially outweigh its prejudicial effect, and to refuse to allow Pope to use it for impeachment purposes.

## B. THE COURT'S DENIAL OF POPE'S REQUEST FOR A NEW TRIAL

The second contention Pope makes is that the district court erred in denying his motion for a new trial based upon newly discovered evidence. The newly discovered evidence was the actual record of Phyllis' 1968 burglary conviction. We review a district court's denial of a motion for a new trial due to newly discovered evidence only for abuse of discretion. *See United States v. Starrett,* 55 F.3d 1525, 1554 (11th Cir.1995).

The Federal Rules of Criminal Procedure state that the "court on motion of defendant may grant a new trial to that defendant if required in the interest of justice." Fed.R.Crim.P. 33. This Circuit has refined and limited that broad language to require that a party moving for a new trial based on newly discovered evidence must satisfy four conditions: (1) the evidence must be newly discovered and have been unknown to the defendant at the time of trial; (2) the evidence must be material, and not merely cumulative or impeaching; (3) the evidence must be such that it will probably produce an acquittal; and (4) the failure to learn of such evidence must not be due to a lack

of due diligence on the part of the defendant. *See United States v. Sjeklocha,* 843 F.2d 485, 487 (11th Cir.1988).

The records concerning the 1968 burglary conviction relate solely to the impeachment of Phyllis, thus failing the second requirement. In addition, nothing in the record suggests that those records would probably produce an acquittal. The records do not change the fact that the conviction was twenty-eight years old at the time of trial. Thus, the newly discovered evidence fails the third requirement, also. Because at least two of the four requirements for a new trial based on newly discovered evidence are not met, the trial court did not abuse its discretion in denying Pope's motion for a new trial.

C. THE EXCLUSION OF ADDITIONAL IMPEACHMENT EVIDENCE

Pope's third contention is that the district court erred when it excluded evidence that tended to cast doubt on Phyllis Pope's character for truthfulness. Pope attempted to introduce two lines of evidence in this regard: (1) two warrants that Phyllis had signed against Pope for threatening her with a gun and illegally possessing a firearm, charges that were later dismissed at a preliminary hearing; and (2) that Phyllis had attempted to fabricate evidence in a custody hearing against her sister-in-law. The purpose of this evidence was to impeach Phyllis. However, Federal Rule of Evidence 608(b) states that specific instances of conduct to show character for untruthfulness cannot be proven through extrinsic evidence. Therefore, the district court did not err in refusing to admit that extrinsic evidence.

D. THE ADMISSION OF TAPED CONVERSATIONS INTO EVIDENCE

The fourth contention that Pope raises is that the district court erred in allowing the jury to hear two audiotapes which contained admissions by Pope that he had committed the crimes with which he was charged in the indictment. Pope contends that the jury should not have had the

opportunity to hear the tapes because inaudible sections of the tapes renders them unreliable.

The district court is required to exclude a recording only if the inaudible or unintelligible portions "are so substantial as to render the whole recording untrustworthy." *United States v. Sutherland,* 656 F.2d 1181, 1200 (5th Cir. Unit A Sept.1981); *accord Sherman v. Burke Contracting, Inc.,* 891 F.2d 1527, 1533 (11th Cir.1990). This determination of reliability is left to the sound discretion of the trial judge. *See id.* After reviewing the tapes, we cannot say that the district court abused its discretion in concluding that the tapes were sufficiently complete to be reliable. Consequently, Pope's challenge to the admission of the audiotapes fails.

## E. THE ADMISSION OF EVIDENCE TENDING TO SHOW POPE IN POSSESSION OF A FIREARM ON DATES NEAR THAT MENTIONED IN THE INDICTMENT

The final contention Pope raises on appeal is that because the indictment only mentions Pope having possession of a firearm on or about October 7, 1994, evidence tending to show that he possessed a firearm on other dates close in time to October 7 constitute "other acts" evidence which should have been excluded under Rule 404(b). However, the indictment charges that the illegal conduct occurred "on or about" October 7, 1994, and time is not an essential element of the offense, so long as the government establishes that the conduct occurred reasonably near the date that the indictment mentions. *See, e.g., United States v. Champion,* 813 F.2d 1154, 1168 (11th Cir.1987) ("[P]roof of a date reasonably near to the specified date is sufficient."); *Russell v. United States,* 429 F.2d 237, 238 (5th Cir.1970) ("[T]he time of the offense is not an essential element of the offense charged in the indictment and, "within reasonable limits, proof of any date before the return of the indictment and within the statute of limitations is sufficient.' ") (citation omitted).

In this case, the district court admitted evidence tending to show that Pope illegally possessed firearms on September 17, 1994 and October 4, 1994. These dates are reasonably near to October 7, 1994 so as to be "on or about" that date. The evidence that Pope contends was

admitted in error was direct evidence of Pope's guilt with respect to the crimes charged in the indictment and therefore it did not fall within Rule 404(b).

### III. THE GOVERNMENT'S CROSS-APPEAL

The government contends that because Pope had previously been convicted of three violent felonies, the district court erred in not sentencing him to a minimum of fifteen years pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(1). That provision requires that if a felon with three previous convictions for violent or drug offenses that are "committed on occasions different from one another" is convicted of illegal possession of a firearm under 18 U.S.C. § 922(g), the court must impose a prison sentence of "not less than fifteen years...." *Id.* At the sentencing hearing, the Government introduced evidence that Pope had previously been convicted of three state law burglaries—one on April 3, 1984, and two on December 1, 1975. The parties agree that these burglaries are violent offenses within the meaning of the ACCA.

Because Pope committed the last two of these burglary offenses on the same day, the district court ruled that sentencing under § 924(e)(1) was not mandated. The court thought that because two of the burglaries occurred on the same night and were of buildings that were within 200 yards of one another, they constituted a single criminal incident for purposes of sentencing under the ACCA. Instead of sentencing Pope in accordance with the ACCA, the court sentenced him to an eighty-seven month term of imprisonment, which was the top of the applicable non-enhanced guideline range.

Resolution of the government's cross-appeal turns on whether the district court correctly concluded that burglaries of two separate buildings approximately 200 yards apart on the same evening do not constitute crimes committed on "occasions different from one another" within the meaning of the ACCA. The question is one of statutory interpretation. We review questions of

statutory interpretation *de novo.  See United States v. McLeod,* 53 F.3d 322, 324 (11th Cir.1995); *see also, e.g., United States v. Tisdale,* 921 F.2d 1095, 1098 (10th Cir.1990) (holding that application of distinct offenses requirement to particular factual situation is legal determination subject to *de novo* review).

A defendant convicted under 18 U.S.C. § 922 is subject to the minimum mandatory sentence of fifteen years that the ACCA imposes, if the defendant has previously been convicted of three drug-related or violent crimes on "occasions different from one another."  Interpreting that language this Court, like other courts of appeals, has held that a defendant is subject to the sentence enhancement of the ACCA if each of the three previous convictions arose out of a separate and distinct "criminal episode."  *See United States v. Greene,* 810 F.2d 999, 1000 (11th Cir.1986);  *see also, e.g., United States v. Towne,* 870 F.2d 880, 889 (2d Cir.1989);  *United States v. Schoolcraft,* 879 F.2d 64, 74 (3d Cir.1989).  Therefore, we must determine whether the two 1975 burglaries, which Pope committed in immediate succession by breaking into and robbing two offices that were 200 yards apart from one another, should be considered separate criminal episodes for purposes of the ACCA.

Although this Court has not addressed this issue in the precise context that the facts of this case presents, other circuits, employing a similar "criminal episode" standard, have decided cases where two or more of the predicate crimes occurred in close temporal and physical proximity to one another.  A review of those decisions suggests that so long as some temporal "break" occurs between the two crimes, they will be held to constitute distinct criminal episodes.  The rule of those decisions appears to be that the ACCA should apply to criminals who commit three crimes in temporal and physical proximity to one another if the perpetrator had a meaningful opportunity to desist his activity before committing the second offense.

Mere temporal proximity is ordinarily insufficient to merge multiple offenses into a single criminal episode. Distinctions in time and place are usually sufficient to separate criminal episodes from one another even when the gaps are small. *See, e.g., United States v. Antonie,* 953 F.2d 496, 499 (9th Cir.1991)(holding two armed robberies committed forty minutes apart to be separate offenses because they occurred at different times and places and affected different victims). When a criminal simultaneously robs several people by committing a single act, all of those robberies do constitute a single episode. *See United States v. Petty,* 828 F.2d 2, 3 (8th Cir.1987) (holding that robbing six people in restaurant "stick up" constituted single episode despite defendant's six robbery convictions); *see also United States v. Graves,* 60 F.3d 1183, 1187 (6th Cir.1995) (holding that burglary and assault on police officer constituted single episode of criminal conduct where crimes were committed at same location, and defendant had not yet left scene of first crime when he committed the second). However, when the crimes occur at distinctly different times, completion of the first crime before commencement of the second indicates that they are distinct criminal episodes.

The Sixth Circuit has held that offenses committed at different locations and involving different victims constitute separate criminal episodes for purposes of the ACCA even though the crimes are committed during a short period of time. In *United States v. Brady,* 988 F.2d 664, 666 (6th Cir.1993) (en banc), the court held that two robberies the defendant committed within thirty minutes of each other were to be treated as separate criminal episodes within the meaning of the ACCA. The *Brady* court noted that once the defendant had committed his first robbery, he could have decided to refrain from additional criminal activity. Instead, he made a conscious decision to proceed to another location and to commit another robbery. That conscious decision, the court concluded, justified counting the robberies separately for the purposes of the ACCA. *See id.* at 669-

70.

The Seventh Circuit has employed similar reasoning. To determine whether separate offenses constitute distinct criminal episodes, the Seventh Circuit has asked whether the defendant "successfully" completed the first offense before committing the second. *See United States v. Schieman,* 894 F.2d 909, 913 (7th Cir.1990). In *Schieman,* the defendant after burglarizing a store had left it and walked several blocks away when a police officer approached and pursued him. The defendant then assaulted the officer. The Seventh Circuit found that once the defendant left the store, he had "successfully" completed the burglary offense, effectively concluding the burglary episode. Therefore, the subsequent assault on the police officer was a separate criminal episode even though the two crimes were committed less than ten minutes apart and were closely connected. *See id.* at 913. That the crimes occurred in sequence (instead of simultaneously), required separate acts of aggression, and were directed towards different victims made them separate criminal episodes under the ACCA. *See id.; see also United States v. Godinez,* 998 F.2d 471, 472-73 (7th Cir.1993) (holding that because crimes reflected "distinct aggressions," kidnaping of woman was distinct crime from robbery of convenience store where crimes were committed an hour apart and defendant kidnaped victim to procure car for commission of robbery).

The Seventh Circuit later extended its *Schieman* holding to a situation more factually similar to Pope's 1975 burglaries, holding that the burglaries of three stores in a strip mall that were committed within a half-hour period were separate criminal episodes within the meaning of the ACCA. *See United States v. Hudspeth,* 42 F.3d 1015, 1019 (7th Cir.1994) (en banc). Citing *Schieman,* the *Hudspeth* court held that the test for whether crimes are distinct under the ACCA is simple: "were the crimes simultaneous or were they sequential?" *Id.* at 1021. The court reasoned that although the three burglaries were closely connected, each reflected a distinct aggression and

had a different victim. *See Hudspeth,* 42 F.3d at 1022. Furthermore, each successive burglary reflected a deliberate decision to commit an additional crime. *See id.*

The *Hudspeth* court explained that its test comports with the purposes of the ACCA. *See id.* The court reasoned that a defendant who has the opportunity to withdraw before committing additional crimes deserves harsher punishment than a criminal who, because he commits several crimes simultaneously, has no separate opportunity to desist. *See id.* Because the ACCA enhances the penalties for a criminal who deliberately chooses to commit multiple crimes, sequential crimes resulting from separate conscious decisions should be treated as distinct criminal episodes.

Likewise, the Tenth Circuit has held that crimes committed in sequence constitute distinct criminal episodes under the ACCA even when the offenses follow in immediate succession. In *United States v. Tisdale,* 921 F.2d 1095, 1099 (10th Cir.1990), it held that burglaries of three separate stores within a shopping mall on the same evening constituted three distinct criminal episodes for purposes of the ACCA. The court emphasized that after the defendant had committed each burglary, he was free to leave and desist from further criminal conduct. *See id.* Because the defendant had to break into a separate store to commit each burglary, each subsequent crime required additional criminal intent and conduct. As a result, each burglary constituted a separate offense under the ACCA despite the temporal and physical proximity of the three crimes. *See id.*

This line of reasoning has not been without its dissenters. The dissenting judges have pointed out that this narrow definition of a criminal episode has the effect of making career criminals out of those who, prior to their § 922 conviction for firearms possession, never really engage in more than a single course of criminal conduct. For example, in his dissent in *Hudspeth,* Judge Ripple contended that looking at the nature of the crimes, the identities of the victims, and the locations of the crimes is insufficient to determine whether two crimes are distinct. Instead, Judge Ripple

asserted that courts should look critically at the facts that surround the predicate convictions to determine whether the crimes were sufficiently closely connected so as to constitute a single criminal episode. Because the proximity of the stores was a factor in making each of the stores a particularly attractive target for the defendants, Judge Ripple reasoned that the three burglaries could only be seen as a single criminal episode. *See Hudspeth,* 42 F.3d at 1034-35 (Ripple, J., concurring in part and dissenting in part); *see also Brady,* 988 F.2d at 677 (Jones, J., dissenting) (proposing similar test).

The judges who have dissented from the majority holdings on this issue argue that the legislative purpose behind the ACCA favors their position. *See Hudspeth,* 42 F.3d at 1034 (Ripple, J., concurring in part and dissenting in part); *Brady,* 988 F.2d at 676-77 (Jones, J., dissenting). The increase in sentence the ACCA requires was intended to punish habitual offenders, who Congress found to be responsible for the disproportionate number of violent crimes. *See Hudspeth,* 42 F.3d at 1034 (Ripple, J., concurring in part and dissenting in part) (*citing* Armed Career Criminal Act: Hearing on H.R. 1627 and S. 52 Before the Subcomm. on Crime of the House Judiciary Comm., 98th Cong., 2d Sess. 12-13 (1984); S.Rep. No. 97-585 at 20 (1982)); *see also Tisdale,* 921 F.2d at 1100 (noting that ACCA was intended to provide additional punishment for armed, recidivist criminals).

However, neither the wording of the ACCA nor its legislative history reveals any intent that the predicate offenses be separated by some substantial amount of time. As originally enacted in 1984, the ACCA had no express requirement that the defendant commit the predicate offenses on different occasions. In 1988, Congress amended the Act by inserting the requirement that the predicate offenses be committed "on occasions different from one another." 18 U.S.C. § 924(e)(1). Congress added this language to the statute after the Eighth Circuit had held that an incident in

which a defendant was convicted of six counts of robbery for simultaneously robbing six restaurant patrons during one "stick up" was sufficient to apply the ACCA. *See United States v. Petty,* 798 F.2d 1157, 1159-60 (8th Cir.1986), *vacated,* 481 U.S. 1034, 107 S.Ct. 1968, 95 L.Ed.2d 810 (1987). Congress added the phrase "committed on occasions different from one another" to avoid outcomes like that in *Petty,* where a single action by a defendant results in a sentence enhancement under the ACCA. *See Hudspeth,* 42 F.3d at 1023 ("Thus a single multicount conviction could still qualify where the counts related to crimes committed on different occasions, but a robbery of multiple victims simultaneously (as in Petty) would count as only one conviction.") (*quoting* 134 Cong. Rec. S17,370 (daily ed. Nov. 10, 1988)(remarks of Sen. Biden)). Therefore, it seems that the different occasion requirement was intended to prevent counting simultaneous crimes separately, not to prevent the separate counting of crimes that the defendant committed in connection with, but distinct from, one another.

Given the broad sweep of the language of the ACCA, even as amended, we find persuasive the virtually unanimous voice with which the other courts of appeals have stated that the "successful" completion of one crime plus a subsequent conscious decision to commit another crime makes that second crime distinct from the first for the purposes of the ACCA. Accordingly, we hold that so long as predicate crimes are successive rather than simultaneous, they constitute separate criminal episodes for purposes of the ACCA. A showing that the crimes reflect distinct aggressions, especially if the defendant committed the crimes in different places, is particularly probative of the sequential nature of those crimes.

In this case, the district court found that Pope's 1975 burglary convictions were for breaking into and robbing two different doctors' offices, which were located 200 yards apart. We can find no meaningful distinction between the facts of this case and both *Hudspeth* and *Tisdale.* In each case,

the defendant completed one burglary then, after going a short distance, made a conscious decision to break into another building and commit another robbery. In each case, the defendant could have chosen to desist after completing his first crime. Because Pope had completed his first burglary when he made the decision to commit the second burglary by breaking into another office 200 yards away, the two crimes were committed on "occasions different from one another." Accordingly, Pope should have been sentenced as a three time offender under the ACCA, and the district court erred in not sentencing him to the mandatory fifteen-year term of imprisonment.

## IV. CONCLUSION

We find no error that warrants reversal of Pope's convictions. However, we do hold that the district court erred in not imposing the mandatory minimum sentence required by the ACCA. Accordingly, we AFFIRM Pope's convictions, but VACATE his sentence and REMAND this case to the district court for resentencing in accordance with this opinion.