[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 12-14989

_____

D.C. Docket No. 5:09-cv-00110-WTH-PRL


DAN CARMICHAEL MCCARTHAN,

Petitioner - Appellant,

versus

WARDEN, FCC COLEMAN - MEDIUM,

Respondent - Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____
(January 20, 2016)

Before MARTIN and ROSENBAUM, Circuit Judges, and PROCTOR,[*] District
Judge.

_____

[*] Honorable R. David Proctor, United States District Judge for the Northern District of
Alabama, sitting by designation.

PER CURIAM:

In 2003, Petitioner Dan McCarthan pled guilty to being a felon-in-possession of a firearm. The maximum sentence for a felon-in-possession conviction is ten years' imprisonment. 18 U.S.C. § 924(a)(2). But the Armed Career Criminal Act ("ACCA"), 28 U.S.C. § 924(e), requires sentencing courts to impose a term of imprisonment no lower than 15 years when a defendant has three prior convictions that qualify as serious drug offenses or violent felonies under the ACCA. 28 U.S.C. §924(e). At the time of his sentencing, McCarthan had five prior convictions that arguably qualified him for an ACCA enhancement, including a 1992 Florida escape conviction. So the sentencing court enhanced McCarthan's sentence to 211 months' imprisonment under the ACCA.

Rather than appeal his sentence directly, McCarthan filed an initial habeas petition under 28 U.S.C. § 2255, collaterally attacking his sentence on grounds of ineffective assistance of counsel. McCarthan's habeas petition was denied, and we subsequently denied him leave to file a second petition under § 2255.

Then, in 2009, the Supreme Court issued its decision in *Chambers v. United States*, 555 U.S. 122, 129 S. Ct. 687 (2009), concluding that at least some escape convictions do not qualify as ACCA predicate convictions. Following the issuance of *Chambers*, McCarthan filed the § 2241 habeas petition at issue here. As a federal prisoner, McCarthan was required to meet the 28 U.S.C. § 2255(e) "savings

2

clause" in order to permit the district court to entertain his § 2241 petition. The district court determined that McCarthan failed to meet the "savings clause" and dismissed his petition for lack of jurisdiction.

McCarthan now appeals the district court's order dismissing his petition. For the reasons below, we affirm the district court's order and likewise conclude that the district court lacked jurisdiction to entertain McCarthan's petition.

## BACKGROUND

On April 9, 2002, McCarthan was indicted for possessing a Winchester rifle, in violation of 18 U.S.C. § 922(g), the statute prohibiting felons from possessing firearms. The indictment alleged that McCarthan knowingly possessed the rifle despite the fact that he had three prior felony convictions, including a 1987 conviction in Florida for possession of cocaine with intent to sell or deliver; a 1992 conviction in Florida for escape; and a 1994 conviction in Florida for third-degree murder. Rather than contest the charge, McCarthan entered a guilty plea on March 4, 2003.

In general, the maximum penalty for violating the felon-in-possession statute is ten years' imprisonment. 18 U.S.C. § 924(a)(2). But the ACCA provides that an individual who violates the statute and who has "three previous convictions . . . for a violent felony or a serious drug offense, or both, committed on occasions

3

different from one another" must be sentenced to at least 15-years' imprisonment. 18 U.S.C. § 924(e)(1).

Before McCarthan's sentencing, a probation officer prepared a presentence investigation report ("PSR"). The criminal-history section of the PSR listed the three felony convictions set forth in the indictment, two 1988 felony convictions in Georgia for possession of cocaine with intent to distribute, and convictions for lesser offenses. Although the probation officer concluded, based on McCarthan's criminal history, that McCarthan was subject to an enhanced sentence under the ACCA, the probation officer did not specify which of McCarthan's prior felony convictions qualified him for the penalty.

Before his sentencing hearing, McCarthan objected to the probation officer's conclusion that he was subject to the ACCA, arguing that the 1992 escape conviction in Florida was not a violent felony. In response, the probation officer modified the PSR to say,

> The Eleventh Circuit has held that a prior escape conviction, even one involving a "walkaway" from a non-secure facility, qualifies as a "crime of violence." *United States v. Gay*, 251 F.3d 950 (11th Cir. 2001). Incidentally, every other circuit to rule on this issue has held that escape is a crime of violence.

The government did not object to the PSR.

On June 4, 2003, McCarthan had his sentencing hearing. During the hearing, McCarthan objected to the probation officer's calculation of his base

4

offense level.  McCarthan also objected to the probation officer's addition of one criminal-history point for a 1993 sentence for opposing an officer without violence, but the probation officer had already corrected the PSR to remove that point.  Otherwise, McCarthan's attorney stated that McCarthan had no further objections to the factual allegations in the PSR or the probation officer's Sentencing Guidelines calculation.  McCarthan's attorney did not raise his earlier written objection regarding the 1992 escape conviction or otherwise object to the imposition of an ACCA enhancement.

The sentencing judge adopted the remaining facts in the PSR, imposed an ACCA enhancement, and sentenced McCarthan to 211 months' imprisonment.  In imposing sentence, the district judge, like the PSR, did not expressly identify which of McCarthan's prior convictions qualified as predicate offenses for purposes of the ACCA enhancement.

McCarthan did not directly appeal his sentence.  Instead, on June 7, 2004, he filed a motion to vacate the sentence under 28 U.S.C. § 2255, alleging ineffective assistance of counsel.[1]  That motion did not address the ACCA enhancement, and the district court denied the motion on the merits on September 30, 2004.[2]  The district court and this Court then denied McCarthan's request for a certificate of

---

[1] Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside Or Correct Sentence By Person In Federal Custody, *McCarthan v. United States*, No. 8:04-cv-1288-SDM-MSS (M.D. Fla. June 7, 2004), ECF No. 1.
[2] Order, *McCarthan v. United States*, No. 8:04-cv-1288-SDM-MSS (M.D. Fla. Sept. 30, 2004), ECF No. 8

5

appealability.[3]    And on February 13, 2006, we denied McCarthan's petition for leave to file a successive § 2255 petition.[4]

After our denial of McCarthan's 2006 petition, the Supreme Court issued two decisions narrowing the class of crimes that qualify as violent felonies under the ACCA.   In 2008, the Supreme Court held that the New Mexico crime of driving under the influence is not a "violent felony" under the ACCA.  *See Begay v. United States*, 553 U.S. 137, 128 S. Ct. 1581 (2008).  A year later, the Supreme Court held that some forms of the Illinois crime of "escape from a penal institution" also do not qualify as violent felonies under the ACCA.  *See Chambers v. United States*, 555 U.S. 122, 129 S. Ct. 687 (2009).

On March 5, 2009, McCarthan filed a § 2241 habeas petition asserting, without explanation, that he was wrongly sentenced as an armed career criminal. McCarthan filed an amended petition on June 19, 2009, clarifying that he believed he was wrongly sentenced because his 1992 escape conviction was no longer a violent felony under the Supreme Court's retroactively applicable decisions in *Chambers* and *Begay*.

The government responded that the district court lacked jurisdiction to hear McCarthan's § 2241 petition.  Observing that only petitioners who can show that

---

[3] Order, *McCarthan v. United States*, No. 8:04-cv-1288-SDM-MSS (M.D. Fla. Jan. 11, 2005), ECF No. 18; Order, *McCarthan v. United States*, No. 04-16359-G (11th Cir. Apr. 12, 2005).

[4] *In re McCarthan*, No. 06-10522-B (11th Cir. Feb. 13, 2006).

6

the remedy provided for under § 2255 is inadequate or ineffective to test the legality of their detention may pursue a remedy under § 2241, *see* 28 U.S.C. § 2255(e), the government argued that McCarthan could not meet that threshold requirement.    Even without the escape conviction, the government reasoned, McCarthan still had four predicate offenses for purposes of the ACCA—the two remaining Florida convictions and the two Georgia drug convictions.    The district court agreed that it lacked jurisdiction to entertain McCarthan's § 2241 petition because McCarthan had "other convictions for crimes that remain classified as 'violent felonies' under [the ACCA]."    McCarthan now appeals that Order.

## ANALYSIS

A federal prisoner seeking to collaterally attack his sentence must, in most instances, pursue relief under 28 U.S.C. § 2255.    Section 2255 grants federal prisoners a cause of action to challenge their sentences as unconstitutional or otherwise unlawful and delineates the procedure for adjudicating these actions.    *Id.* In addition, the so-called "savings clause" contained in § 2255(e) allows a federal court to entertain a federal prisoner's § 2241 habeas petition in the limited circumstances where the prisoner demonstrates that the remedy in § 2255 "is inadequate or ineffective to test the legality of his detention."    28 U.S.C. § 2255(e). We have held that § 2255(e) imposes a jurisdictional restriction on a federal court's power to entertain a § 2241 petition. *Williams v. Warden, Fed. Bureau of Prisons*,

713 F.3d 1332, 1337 (11th Cir. 2013), *cert. denied sub nom. Williams v. Hastings*, __ U.S. __, 135 S. Ct. 52 (2014).

As a result, McCarthan's appeal of the district court's denial of his § 2241 habeas petition potentially presents two issues:  (1) whether jurisdiction under § 2255(e) exists to entertain McCarthan's § 2241 claim; and (2) if so, whether McCarthan is entitled to relief on the merits of his § 2241 petition.  Because we conclude that the district court lacked jurisdiction to hear McCarthan's § 2241 petition, we do not reach the merits of McCarthan's petition.

## I.    The Savings Clause and Section 2241

Federal courts, of course, are courts of limited jurisdiction, "possess[ing] only that power authorized by Constitution and statute."  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S. Ct. 1673, 1675 (1994).  For this reason, before turning to the merits of any dispute, a federal court must determine whether Congress or the Constitution empowered it to hear the matter at all.  *See, e.g.*, *Williams*, 713 F.3d at 1337.

In the realm of habeas, Congress has erected a substantial limitation on the power of federal courts to entertain federal prisoners' § 2241 petitions.  As we have noted, the § 2255 savings clause strips federal courts of subject-matter jurisdiction to entertain a federal prisoner's § 2241 habeas petition, unless the prisoner demonstrates that the remedy in § 2255 "is inadequate or ineffective to

test the legality of his detention."   28 U.S.C. § 2255(e); *Williams*, 713 F.3d at 1340.  In other words, whether a federal prisoner pursuing a § 2241 petition meets the § 2255(e) savings clause and thereby opens the portal to § 2241 merits consideration is a threshold issue that must be resolved before turning to the merits of a § 2241 petition.

Notably, § 2255(h) prohibits federal prisoners from filing second or successive § 2255 petitions unless there is newly discovered evidence or a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court.  28 U.S.C. § 2255(h).  In the past, petitioners subject to § 2255(h)'s bar argued that they met the savings clause because § 2255(h), in and of itself, rendered § 2255 inadequate or ineffective to test the legality of their detention.  We rejected that proposition.  *Gilbert v. United States*, 640 F.3d 1293, 1307-09 (11th Cir. 2011) (en banc).  In *Gilbert*, we held that "the savings clause does not authorize a federal prisoner to bring in a § 2241 petition a claim, which would otherwise be barred by § 2255(h), that the sentencing guidelines were misapplied in a way that resulted in a longer sentence not exceeding the statutory maximum." *Id.* at 1323.

But that does not mean that a federal prisoner sentenced to a term of imprisonment longer than the statutory maximum under the ACCA may not pursue a § 2241 petition, even though he is subject to § 2255(h)'s bar.  Following our

decision in *Gilbert*, we formulated a five-part test that a petitioner like McCarthan must satisfy in order to meet the savings clause and endow a federal court with jurisdiction to entertain his § 2241 petition. *See Bryant v. Warden, FCC Coleman-Medium*, 738 F.3d 1253, 1274 (11th Cir. 2013). The *Bryant* test requires McCarthan to show all of the following:

> (1)    throughout his sentencing, direct appeal, and first § 2255 proceeding, our Circuit's binding precedent had specifically addressed [his] distinct prior state conviction that triggered § 924(e) and had squarely foreclosed [his] § 924(e) claim that he was erroneously sentenced above the 10-year statutory maximum penalty in § 924(a);
>
> (2)    subsequent to his first § 2255 proceeding, [a] Supreme Court[] decision . . . , as extended by this Court to [his] distinct prior conviction, overturned our Circuit precedent that had squarely foreclosed [his] § 924(e) claim;
>
> (3)    the new rule announced in [the Supreme Court case] applies retroactively on collateral review;
>
> (4)    as a result of [the Supreme Court case's] new rule being retroactive, [his] current sentence exceeds the 10-year statutory maximum authorized by Congress in § 924(a); and
>
> (5)    the savings clause in § 2255(e) reaches his pure § 924(e)[] error claim of illegal detention above the statutory maximum penalty in § 924(a).

*Id.* The purpose of this test is to prevent us from entertaining § 2241 petitions by federal prisoners who could have at least theoretically successfully challenged an

10

ACCA enhancement in an earlier proceeding—that is, to ensure that no other aspect of § 2255 could have been "[]adequate or []effective to test the legality of his detention."  28 U.S.C. § 2255(e).

## II.    McCarthan Cannot Access the Savings Clause

As an initial matter, it is immediately obvious that McCarthan's claim satisfies parts two, three, and five of the *Bryant* test.  Part two of the *Bryant* test requires McCarthan to demonstrate that, "subsequent to his first § 2255 proceeding, [a] Supreme Court[] decision . . . , as extended by this Court to [his] distinct prior conviction, overturned our Circuit precedent that had squarely foreclosed [his] § 924(e) claim."  *Id.*  Here, it is undisputed that following the final disposition of McCarthan's initial § 2255 petition in 2005, the Supreme Court's 2008 decision in *Begay* and 2009 decision in *Chambers* overturned our decision in *United States v. Gay*, 253 F.3d 950 (11th Cir. 2001), where we classified walkaway escape as a violent felony.  Following the Supreme Court's decisions in *Begay* and *Chambers*, we issued *United States v. Lee*, 586 F.3d 859, 874–75 (11th Cir. 2009), interpreting *Begay* and *Chambers* to include as non-qualifying predicate convictions Florida escape convictions.  So McCarthan meets step two of the *Bryant* test.[5]

---

[5] Our colleague construes the first step of *Bryant* as requiring both (1) that the habeas petitioner demonstrate that a successful objection to the particular predicate conviction used to attempt to open the § 2255(e) portal was squarely foreclosed by our Circuit's binding precedent

11

McCarthan also satisfies step three of *Bryant*.  This step requires petitioners to demonstrate that a circuit-busting Supreme Court rule "applies retroactively on collateral review."  *Bryant*, 738 F.3d at 1274.  We have already held that *Begay* applies retroactively on collateral review.  *Id.* at 1276-78.  We now conclude that *Chambers* applies retroactively for the same reasons as *Begay*.  As the Supreme Court has explained, new substantive rules, including "decisions that narrow the scope of a criminal statute by interpreting its terms," generally "apply retroactively because they necessarily carry a significant risk that a defendant stands convicted of an act that the law does not make criminal or faces a punishment that the law cannot impose upon him."  *Schriro v. Summerlin*, 542 U.S. 348, 352, 124 S. Ct. 2519, 2522-23 (2004).

Here, the Supreme Court's circuit-busting rule in *Chambers* is substantive for the same reasons we held that *Begay* is substantive in *Bryant*.  *See* 738 F.3d at 1276-78.  Namely, *Chambers*, like *Begay*, narrows the scope of 28 U.S.C. § 924(e)

throughout sentencing, direct appeal, and the first § 2255 proceeding; and (2) that fewer than three qualifying predicate convictions remain when we discount the squarely foreclosed predicate conviction.  *See* Concurrence at 41.  We see two problems with this construction of *Bryant*'s first step.  First, it elevates a restrictive phrase whose role it is simply to identify which "distinct prior state conviction" "binding precedent had specifically addressed," to an independent requirement of the first step of *Bryant*.  But step one of *Bryant* requires a petitioner to show only that "***binding precedent***" did two things—that "binding precedent had specifically addressed . . . and had squarely foreclosed."  (emphasis added).  That is why both verbal phrases in the sentence have the same subject: "binding precedent."    Step one does not impose any requirement regarding the number of qualifying predicate convictions.  That is the job of the fourth step of *Bryant*—which brings us to our second point: as our colleague appears to acknowledge, *see* Concurrence at 38 n.1, his proposed reading of step one renders *Bryant*'s fourth step entirely redundant and unnecessary.  *See infra* at Section II.B.1.

by interpreting the term "violent felony." *See Chambers*, 555 U.S. at 127-30, 129 S. Ct. at 691-93.  And, as with *Begay*, "significant risk" exists that some defendants "who were sentenced before [*Chambers*] have erroneously received the increased penalties under § 924(e) and now are serving prison terms above the otherwise applicable statutory maximum of 10 years."  *Id.*  For these reasons, *Chambers*, like *Begay*, is a new substantive rule and applies retroactively on collateral review.  McCarthan therefore meets *Bryant* step three.

As for *Bryant* step five, McCarthan satisfies that as well.  Under step five, a petitioner must demonstrate that "the savings clause in § 2255(e) reaches his pure § 924(e)[] error claim of illegal detention above the statutory maximum penalty in § 924(a)."  *Bryant*, 738 F.3d at 1274.  Here, *Bryant* itself dictates that the savings clause reaches McCarthan's claim of "pure § 924(e)-*Begay* claim of illegal detention above the statutory maximum penalty in § 924(a)."  *Id.* at 1281-84. Thus, McCarthan meets *Bryant* step five.

Consequently, only *Bryant* steps one and four are at issue here.  For the reasons below, we conclude that McCarthan meets step one but not step four.

### A.  McCarthan Satisfies *Bryant* Step One

At *Bryant* step one, McCarthan must show that throughout his sentencing, direct appeal, and first § 2255 proceeding, our Circuit's binding precedent squarely foreclosed him from challenging the ACCA-predicate status of his escape

13

conviction. *See id.* at 1274. Here, McCarthan argues that throughout his sentencing, direct appeal, and first § 2255 proceeding, he was squarely foreclosed from challenging his Florida escape conviction by our decision in *United States v. Gay*, 251 F.3d 950 (11th Cir. 2001) (per curiam). We agree.

In *Gay*, we held that escape convictions, including those for walking away from an unsecured correctional facility, categorically qualified as "crime[s] of violence" for the purpose of sentencing defendants as career offenders under the Sentencing Guidelines. *Gay*, 251 F.3d at 954. Then, in March 2004, we held that the definition of a "crime of violence" under the Sentencing Guidelines is "virtually identical" to the definition of a "violent felony" under the ACCA. *United States v. Rainey*, 362 F.3d 733, 735 (11th Cir. 2004). The clear and ineluctable import of our decisions in *Gay* and *Rainey* is that McCarthan was squarely foreclosed from arguing that his escape conviction was not a "violent felony" under the ACCA when he filed his initial § 2255 petition in June 2004. Indeed, following the final disposition of McCarthan's initial § 2255 petition, we cursorily recognized the obvious, observing that *Gay* memorialized "our rule" "that escape," including Florida escape, "is categorically a violent felony" under the ACCA. *United States v. Taylor*, 489 F.3d 1112, 1114, 1114 n.3 (11th Cir. 2007) *cert. granted, judgment vacated*, 555 U.S. 1132, 129 S. Ct. 990 (2009).

14

The government disagrees, contending that *Gay* did not squarely foreclose McCarthan from challenging his escape conviction in his initial habeas petition for two reasons. First, *Gay* held that escape was a "crime of violence" under the Sentencing Guidelines, not a "violent felony" under the ACCA. 251 F.3d at 954. Second, the escape conviction in *Gay* was issued under Georgia's escape statute, not Florida's escape statute. *Id.* at 952. The government argues that, for these reasons, McCarthan was not squarely foreclosed from challenging his Florida escape conviction when he filed his § 2255 petition in June 2004. We are not persuaded.

### 1.    Gay*'s Categorical Holding Applied With Equal Force To Sentencing Guidelines Cases and ACCA Cases*

The government's attempt to distinguish *Gay* on the grounds that it addressed the nature of escape convictions under the Sentencing Guidelines, but not the ACCA, is without merit. As we have often reiterated, the definitions of a "crime of violence" under the Sentencing Guidelines and of a "violent felony" under the ACCA are "virtually identical." *See, e.g.*, *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008); *Rainey*, 362 F.3d at 735. Crimes that "involve[] conduct that presents a serious potential risk of physical injury to another" qualify as both "crime[s] of violence" under the Sentencing Guidelines and "violent felon[ies]" under the ACCA. *Compare* U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(a)(2) (U.S. SENTENCING COMM'N 2003) (conviction is a crime of violence if

15

it "otherwise involves conduct that presents a serious potential risk of physical injury to another"), *with* 18 U.S.C. § 924(e)(2)(B)(ii) (conviction is a violent felony if it "otherwise involves conduct that presents a serious potential risk of physical injury to another"). For this reason, we apply decisions on whether a crime presents the requisite potential risk of physical injury to qualify as a "crime of violence" under the Sentencing Guidelines in subsequent cases on a crime's status as a "violent felony" under the ACCA, and vice versa. *Gilbert v. United States*, 640 F.3d 1293, 1309 n.16 (11th Cir. 2011) (en banc); *Turner v. Warden Coleman FCI (Medium)*, 709 F.3d 1328, 1335 n.4 (11th Cir.), *cert. denied sub nom. Turner v. Pastrana*, __ U.S. __, 133 S. Ct. 2873 (2013), *abrogated on other grounds by Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015), *and United States v. Hill*, 799 F.3d 1318 (11th Cir. 2015).

In *Gay*, we categorically classified "escape" as a "crime of violence" under the Sentencing Guidelines. 251 F.3d at 953-55. In reaching this conclusion, we held that escape "present[s] the potential risk of violence" to qualify as a crime of violence—that is, a serious potential risk of physical injury—"even when it involves a 'walk-away' from unsecured correctional facilities." *Id.* at 955. We also explicitly agreed with out sister circuits' decisions holding that the crime of escape categorically "presents a serious potential risk of physical injury." *Id.* at 953-55. As a result of our holding in *Gay*, escape convictions necessarily

16

categorically qualified as both crimes of violence under the Sentencing Guidelines and violent felonies under the ACCA. *See* U.S. SENTENCING GUIDELINES MANUAL § 4B1.2(a)(2) (U.S. SENTENCING COMM'N; 18 U.S.C. § 924(e)(2)(B)(ii). Indeed, we later expressly recognized as much. *See Taylor*, 489 F.3d at 1114 n.3. As a result, we cannot agree with the government's contention that *Gay* did not squarely foreclose McCarthan from challenging his escape conviction because *Gay* was a Sentencing Guidelines case. *Gay*'s preclusive effect applied equally in ACCA cases.

> ### 2.    Gay*'s Categorical Holding Applied With Equal Force To Escape Convictions Under Georgia and Florida Law*

The government's attempt to distinguish *Gay* on the grounds that it involved a Georgia escape statute[6] rather than the Florida escape statute under which

---

[6] In *Gay*, the petitioner was convicted under the Georgia escape statute, which provided that a person is guilty of escape when she or he:

> (1) Having been convicted of a felony or misdemeanor or of the violation of a municipal ordinance, intentionally escapes from lawful custody or from any place of lawful confinement;
>
> (2) Being in lawful custody or lawful confinement prior to conviction, intentionally escapes from such custody or confinement;
>
> (3) Having been adjudicated of a delinquent or unruly act or a juvenile traffic offense, intentionally escapes from lawful custody or from any place of lawful confinement;
>
> (4) Being in lawful custody or lawful confinement prior to adjudication, intentionally escapes from such custody or confinement; or
>
> (5) Intentionally fails to return as instructed to lawful custody or lawful confinement or to any residential facility operated by the Georgia Department of

McCarthan was convicted[7] is also unpersuasive.  In most § 2241 cases, petitioners argue that they were squarely foreclosed from attacking a conviction by our (subsequently overturned) decision on the ACCA status of convictions issued under the same statute the petitioner was convicted under.  *See, e.g.*, *Mackey v. Warden, FCC Coleman-Medium*, 739 F.3d 657, 662 (11th Cir. 2014); *Bryant*, 738 F.3d at 1274-75.  The government would have us limit access to the savings clause

> Corrections after having been released on the condition that he or she will so return; provided, however, such person shall be allowed a grace period of eight hours from the exact time specified for return if such person can prove he or she did not intentionally fail to return.

GA. CODE ANN. § 16-10-52(a) (1981–2000); *see Gay*, 251 F.3d at 952.

[7] The PSR does not specify which Florida statute formed the basis of McCarthan's escape conviction, but, at the time of his conviction, Florida's escape statute provided:

> Any prisoner confined in any prison, jail, road camp, or other penal institution, state, county, or municipal, working upon public roads, or being transported to or from a placement of confinement who escapes or attempts to escape from such confinement shall be guilty of a felony of the second degree.

*K.A.N. v. State*, 582 So. 2d 57, 59 n.2 (Fla. Dist. Ct. App. 1991) (quoting FLA. STAT. § 944.40 (1989)).  Florida law also criminalizes "[t]he willful failure of an inmate to remain within the extended limits of his or her confinement or to return within the time prescribed to the place of confinement designated by the department" as a form of "escape."  FLA. STAT. § 945.091(4).

> The PSR's description of McCarthan's Florida escape conviction provides as follows:

> According to court records, on February 14, 1988, the defendant signed out for work from the Tampa Community Corrections Center with a return time of 1:30 a.m. on February 15, 1998.  He failed to return to [sic] by 1:30 a.m., as required.  The defendant returned to the center at 12:58 p.m. on February 15, 1998.  The escape report was canceled.  At 3:30 p.m. on February 15, 1988, the defendant left the center without permission, and an escape report was again initiated.

From this description, we cannot tell whether McCarthan was convicted under Fla. Stat. § 944.40 or Fla. Stat. § 945.091(4).

18

to those types of cases.  In other words, the government contends that a petitioner cannot succeed at *Bryant* step one unless he can show that we previously addressed the ACCA status of convictions under the very same statute as the petitioner's challenged conviction.  But our precedent compels us to reject the government's form-over-substance approach to the squarely foreclosed inquiry.

In *Williams v. Warden, Federal Bureau of Prisons*, and *Bryant*, we explained that a challenge is squarely foreclosed when a § 2241 petitioner had no "genuine opportunity" to raise it due to the effect of binding Circuit precedent, and that a challenge is squarely foreclosed if our Court would have been "unwilling to listen to [it]."  *Williams*, 713 F.3d 1332, 1343-44 (11th Cir. 2013) *cert. denied sub nom. Williams v. Hastings*, __ U.S. __, 135 S. Ct. 52 (2014); *Bryant*, 738 F.3d at 1275.  *Gay* left McCarthan "no genuine opportunity" to raise a challenge to his escape conviction, and we would have been "unwilling to listen" to any such challenge, thereby foreclosing any challenge to his escape conviction.

In *Gay*, as we have mentioned, we categorically classified "escape" as a crime that presents "serious potential risk of physical injury to another."  *See* 251 F.3d at 953-55.  Nowhere in *Gay* did we limit our holding to Georgia escape convictions.  Instead, we surveyed our sister circuits' decisions on escape convictions obtained under other states' statutes and concluded that "a prior escape conviction," not merely a prior Georgia escape conviction, categorically "qualifies

19

as a 'crime of violence,'" "even when it involves a 'walk-away' from unsecured correctional facilities." *Id.* Indeed, in the interim between *Gay* and *Chambers*, we held that *Gay*'s holding precluded a petitioner from challenging the ACCA status of a Florida escape conviction based on "our . . . conclusion in *Gay* that escape is *categorically* a violent felony." *Taylor*, 489 F.3d at 1114 n.3 (emphasis added).

After *Gay*, then, even we concluded that petitioners were squarely foreclosed from challenging the ACCA status of escape convictions, regardless of which state's statute a petitioner was convicted under. Following *Gay*'s categorical holding, McCarthan had no genuine opportunity to challenge the ACCA status of his escape conviction, and, if he had raised such a challenge on appeal, we would have been unwilling to listen to it. For those reasons alone, McCarthan meets *Bryant* step one.

We also note, however, that it would be particularly incongruous to hold otherwise in this case. As described above, McCarthan initially objected to the PSR, arguing that his escape conviction was not an ACCA-qualifying offense. In response, the probation officer filed an addendum to the PSR, responding,

> The Eleventh Circuit has held that a prior escape conviction, even one involving a "walkaway" from a non-secure facility, qualifies as a "crime of violence." *United States v. Gay*, 251 F.3d 950 (11th Cir. 2001).

The government did not object to the PSR. The Court subsequently adopted all of the factual statements in the PSR. And, following McCarthan's initial § 2255

20

petition, we issued our decision in *Taylor*, citing nothing other than *Gay* in support of the proposition that a petitioner was categorically foreclosed from challenging the ACCA status of his Florida escape conviction.  *Taylor*, 489 F.3d at 1114 n.3. In these circumstances, it would be it would be uniquely unfair for us to now hold that *Gay* did not, in fact, squarely foreclose McCarthan from challenging his escape conviction.

### B.  McCarthan Does Not Meet *Bryant* Step Four

At step four, McCarthan must demonstrate that, following the Supreme Court's decision rendering his squarely foreclosed conviction invalid, his "current sentence exceeds the 10-year statutory maximum authorized by Congress in § 924(a)."  *Bryant*, 738 F.3d at 1274.  Whether a prisoner may bring a 28 U.S.C. § 2241 petition under the savings clause of § 2255(e) and, by extension, whether he meets *Bryant* step four, is a question of law we review de novo.  *Id.* at 1262.

#### 1.   The Difference Between Bryant *Step Four And The Merits Analysis Of A § 2241 Petition*

Before we analyze whether McCarthan has met *Bryant* step four, we pause to address the operation of this step.  The *Bryant* test is a jurisdictional test, not a merits test: if a petitioner meets the *Bryant* test, he establishes jurisdiction under the savings clause, and a federal court is empowered to entertain his § 2241 petition; then, and only then, does a federal court turn to the merits of a § 2241 petition.  *See Williams v. Warden, Fed. Bureau of Prisons*, 713 F.3d 1332, 1337

(11th Cir. 2013), *cert. denied sub nom. Williams v. Hastings*, __ U.S. __, 135 S. Ct. 52 (2014) (holding that § 2255(e) is a subject-matter jurisdictional limitation on the power of federal courts to entertain a § 2241 petition); *Bryant*, 713 F.3d at 1262 ("[W]hether the savings clause in § 2255(e) may open the portal to a § 2241 petition is a 'threshold' jurisdictional issue that must be decided before delving into the merits of the petitioner's claim and the applicable defenses.").

The fourth prong of the *Bryant* test requires a prisoner to show that he is not eligible for an ACCA enhancement by demonstrating that he has two or fewer convictions supporting his ACCA enhancement. *See Bryant*, 738 F.3d at 1279. At first glance, that might appear to be precisely the same determination that we must make on the merits of a § 2241 petition. But, in fact, the language of the savings clause dictates a distinction between our analysis at step four of the *Bryant* test and our merits determination of a § 2241 petition. Specifically, our jurisdictional and merits analyses differ with respect to how we treat certain types of predicate convictions and the related issue of procedural default.[8]

---

[8] Predicate convictions include (1) a petitioner's prior convictions that the sentencing court relied upon in imposing the petitioner's ACCA enhancement; and (2) convictions that the government argued should count as ACCA predicate convictions and for which the government properly preserved an objection to the sentencing court's failure to identify them as such. The government bears the burden of objecting to a district court's decision not to rely on certain of a defendant's ACCA-qualifying convictions at sentencing to impose an ACCA enhancement. *United States v. Petite*, 703 F.3d 1290, 1292 n.2 (11th Cir.) *cert. denied*, __ U.S. __, 134 S. Ct. 182 (2013). If the government fails to object to the district court's decision to rely on fewer than all ACCA-qualifying convictions, it waives any argument that a sentencing court's imposition of an ACCA enhancement is justified on the basis of an ACCA-qualifying conviction that the

22

In general, a § 2241 petitioner's ACCA enhancement may be based on two types of predicate convictions: valid predicate convictions and invalid predicate convictions. Valid predicate convictions are those convictions that qualified as ACCA predicate convictions at the time of the petitioner's sentencing and that remain ACCA-qualifying convictions at the time of habeas review. Invalid predicate convictions, on the other hand, are convictions that do not qualify as ACCA predicate convictions at the time of habeas review.

Invalid predicate convictions fall into two camps. In one camp are invalid predicate convictions that a federal prisoner could not have challenged in his initial § 2255 petition because any challenge was squarely foreclosed by binding Circuit precedent that the Supreme Court only subsequently overturned ("squarely foreclosed convictions"). In the other camp are invalid predicate convictions that a defendant could have, but failed to, challenge earlier ("erroneously counted convictions").

---

district court could have, but did not, rely on at sentencing. *Id.* In other words, the government may not substitute a new predicate offense for an invalid predicate offense for the first time on appeal where it failed to object to the sentencing court's decision not to rely on the new predicate offense at sentencing. *Id.* Similarly, we will not permit the government to swap out such unidentified ACCA predicate offenses in a petitioner's collateral attack on his ACCA enhancement. *Bryant*, 738 F.3d at 1279. Where, however, the government properly preserves an objection to a sentencing court's failure to identify a defendant's additional ACCA-qualifying conviction in imposing an ACCA enhancement, the government may rely on the unidentified ACCA conviction in both a § 2251 petition and in a § 2241 petition, including at both the jurisdictional and merits inquiries in a § 2241 petition.

We treat valid predicate convictions identically at *Bryant* step four and on the merits. At both *Bryant* step four and on the merits of a § 2241 petition, we must determine whether a federal prisoner's ACCA enhancement is supported by three ACCA predicate offenses. *Bryant*, 638 F.3d at 1274, 1278-79. Valid predicate convictions that remain valid, of course, are tallied towards the three predicate offenses at both *Bryant* step four and on the merits. *See id.*

However, we treat squarely foreclosed convictions and erroneously counted convictions differently at *Bryant* step four and at the merits stage. On the merits, it is well established that squarely foreclosed and erroneously counted convictions will count against a petitioner under the procedural-default rule, unless the government waives the affirmative defense or the petitioner can demonstrate actual innocence or cause and prejudice. *Sawyer v. Holder*, 326 F.3d 1363, 1366 (11th Cir. 2003) (applying the procedural default rule on the merits of a § 2241 petition). But before we get to the merits analysis, we do not address procedural-default arguments because procedural default is not a jurisdictional bar to exercise of § 2241 jurisdiction, but an affirmative defense that the government may raise to the merits of a petitioner's habeas claim; and "whether the savings clause in § 2255(e) may open the portal to a § 2241 petition is a 'threshold' *jurisdictional* issue that must be decided before delving into the merits of the petitioner's claim and the applicable defenses," including the affirmative defense of procedural default.

24

*Bryant*, 738 F.3d at 1262.  Moreover, the savings clause itself precludes us from addressing procedural default at the jurisdictional stage by specifying that a petitioner may access § 2241 regardless of whether he has "failed to apply for relief" or whether he has been "denied . . . relief" under § 2255.  28 U.S.C. § 2255(e); *see Bryant*, 738 F.3d at 1262.  Instead, we look to the language of the savings clause to determine whether to tally squarely foreclosed and erroneously counted convictions against a petitioner at *Bryant* step four.

The language of § 2255(e) dictates that we will not tally squarely foreclosed and erroneously counted convictions against a § 2241 petitioner at *Bryant* step four when a timely challenge to those convictions could not have resulted in a determination that the ACCA enhancement was inapplicable.  When, at the time of an initial § 2255 petition, a petitioner has two or fewer valid predicate convictions and one or more squarely foreclosed convictions—the combination of which totals at least three, he would still be subject to an ACCA enhancement, even if he timely challenged any squarely foreclosed and erroneously counted convictions in his initial § 2255 petition.  Binding Circuit precedent would require the habeas court to tally the petitioner's valid predicate convictions and squarely foreclosed convictions against him, adding up to at least three ACCA predicate offenses.  As a result, the petitioner could not have obtained relief from his ACCA enhancement, even if the erroneously counted convictions were not tallied against him.  In these

25

cases, the remedy in § 2255 *is* "inadequate or ineffective to test the legality" of the petitioner's ACCA enhancement at the time of his initial § 2255 petition.[9]    28 U.S.C. § 2255(e).  As a result, we will not tally a petitioner's erroneously counted convictions against him at *Bryant* step four in these cases.[10]

---

[9] For these same reasons, to the extent that our colleague's Concurrence can be read to suggest that McCarthan must show under *Bryant* step one that both his escape conviction and his erroneously counted convictions were squarely foreclosed, such a reading conflicts with the language of § 2255(e) requiring only that a petitioner demonstrate that the "remedy by motion" is "inadequate or ineffective to test the legality of his detention."  And it is only within the context of that statutory language that the *Bryant* test exists.  In other words, the *Bryant* test is not some independent test that a petitioner must satisfy *in addition to* the requirement of § 2255(e) to show that the "remedy by motion" is "inadequate or ineffective to test the legality of [the petitioner's] detention; rather, the purpose of each step of *Bryant* is to help us to determine when the "remedy by motion" is "inadequate or ineffective to test the legality of [the petitioner's] detention."  *See Bryant*, 783 F.3d at 1274 ("To show his prior § 2255 motion was 'inadequate or ineffective to test the legality of his detention,' Bryant must establish [the five *Bryant* factors].").  In turn, the "remedy by motion" is "inadequate or ineffective to test the legality of [the petitioner's] detention" when the sum of validly counted convictions and squarely foreclosed convictions totals at least three, regardless of how many erroneously counted convictions the petitioner may also have.  Even if he successfully challenged all erroneously counted convictions, he would still have three convictions (valid and subsequently squarely foreclosed) and not be entitled to relief at the time of his first petition.  As a result, it is the squarely foreclosed conviction—and only that conviction—that renders the "remedy by motion" "inadequate or ineffective to test the legality of [the petitioner's] detention," and thus, that "trigger[s] § 924(e)" for purposes of § 2255(e).

[10] In cases where a petitioner has both (1) a mix of squarely foreclosed and valid predicate convictions made up of one or more squarely foreclosed convictions and two or fewer valid predicate convictions, totaling at least three, and (2) *three* or more erroneously counted convictions, there may be a temptation to conclude that a petitioner's procedural default on the erroneously counted convictions precludes him from succeeding on *Bryant* step four.  For instance, a court might be tempted to conclude that, regardless of whether the petitioner successfully challenges his squarely foreclosed conviction(s), he still had three erroneously counted convictions that he failed to challenge in his initial § 2255 petition.  But, again, procedural default is an affirmative defense that the government may raise to the merits of a petitioner's habeas claim, not a bar to the exercise of § 2241 jurisdiction.  *Bryant*, 738 F. 3d at 1261-62; *see supra* at pp. 24-25.  So we do not address procedural default at the jurisdictional stage, including in *Bryant* step four.  *Bryant*, 738 F.3d at 1261-62; *see supra* at pp. 24-25.  [footnote continued]

In sum, to survive *Bryant* step four, a § 2241 petitioner challenging an ACCA enhancement must demonstrate that his eligibility for relief from the enhancement became available only after the Supreme Court retroactively rendered one or more of his squarely foreclosed convictions invalid. This means that, at *Bryant* step four, a petitioner must (1) look at his predicate convictions (including those the sentencing court counted in imposing an ACCA enhancement and those the sentencing court did not count but for which the government preserved an argument that the sentencing court should have counted in imposing the enhancement); (2) remove erroneously counted convictions and show that there were still at least three remaining convictions at the time of his initial § 2255 petition; and (3) show that fewer than three *valid* ACCA predicate convictions remain once all squarely foreclosed convictions are removed.

---

Instead, we must determine whether the petitioner could have effectively challenged his ACCA enhancement in an initial habeas petition. 28 U.S.C. § 2255(e). In any and every case where a petitioner has two or fewer valid predicate convictions and one or more squarely foreclosed convictions at the time of his initial habeas appeal, totaling at least three convictions, the answer will be no, regardless of how many erroneously counted convictions the petitioner has. Binding Circuit precedent would have dictated that the petitioner's ACCA enhancement be upheld as being supported by three qualifying predicate offenses even if the petitioner had timely and successfully contested all of the erroneously counted convictions. As a result, the remedy in § 2255 is inadequate or ineffective to test the legality of a petitioner's ACCA enhancement whenever he has a mix of at least three convictions made up of one or more squarely foreclosed convictions and two or fewer valid predicate convictions at the time of his initial habeas appeal.

In these cases, then, the petitioner will meet *Bryant* step four. The petitioner will still, however, be required to hurdle the procedural-default bar to obtain relief on the merits. *See supra* at p. 24. Notably, the government may choose to waive the procedural-default defense at the merits stage.

27

### 2. The Universe of Convictions

Another question we must address before turning to our analysis of whether McCarthan meets *Bryant* step four is which of McCarthan's convictions are at issue at *Bryant* step four. In most cases we see, the PSR or the sentencing court expressly identifies which convictions support a petitioner's ACCA enhancement. Here, in contrast, neither the sentencing court nor the PSR identified which convictions qualified McCarthan for an ACCA enhancement.

In general, both the PSR and the sentencing court should specifically identify which of a defendant's prior convictions qualify a defendant for an enhanced ACCA sentence. Title 18, United States Code, Section 3553(c) requires a sentencing court to "state in open court the reasons for its imposition of the particular sentence." Under this provision, a defendant is entitled to know the specific convictions on which an ACCA enhancement is recommended and imposed. To hold otherwise would raise serious due-process concerns. *Cf. Oyler v. Boles*, 368 U.S. 448, 452, 82 S. Ct. 501 (1962) ("[A] defendant must receive reasonable notice and an opportunity to be heard relative to [a] recidivist charge even if due process does not require that notice be given prior to the trial on the substantive offense."); *United States v. Moore*, 208 F.3d 411, 414 (2d Cir. 2000) ("It is settled that due process requires that a defendant have notice and an

opportunity to contest the validity or applicability of the prior convictions upon which a statutory sentencing enhancement is based.").

Here, however, McCarthan did not object to the PSR's failure to identify which of his prior convictions justified an ACCA enhancement. Nor did McCarthan object to the sentencing court's adoption of the PSR, or its failure to identify specific prior convictions in support of its imposition of an ACCA enhancement. McCarthan also did not raise the issue in his initial § 2255 petition. On these facts, McCarthan forfeited any objection to the sentencing court's failure to identify the specific convictions supporting his ACCA enhancement. We must, therefore, assume that the district court relied on all of McCarthan's ACCA-qualifying convictions in imposing McCarthan's ACCA enhancement.

### 3. McCarthan Does Not Meet the Jurisdictional Inquiry at Bryant Step Four

With these observations in mind, we proceed to determine whether McCarthan has demonstrated that his "current sentence exceeds the 10-year statutory maximum authorized by Congress in § 924(a)." *Bryant*, 738 F.3d at 1274. We conclude that he has not because he has shown that the 10-year statutory maximum applies in his case.

There is no dispute that, at the time of his sentencing, McCarthan's PSR listed five, and only five, prior convictions that arguably qualified as ACCA predicate convictions: (1) a 1987 conviction in Florida for possession of cocaine

29

with intent to sell or deliver; (2) a 1988 felony conviction in Georgia for possession of cocaine with intent to distribute; (3) a second 1988 felony conviction in Georgia for possession of cocaine with intent to distribute; (4) a 1992 conviction in Florida for escape; and (5) a 1994 conviction in Florida for third-degree murder. The parties agree that McCarthan's 1992 Florida escape conviction is no longer a valid ACCA predicate—in other words, that it is a squarely foreclosed conviction. The parties also agree that the 1987 Florida cocaine conviction was, and remains, a valid predicate conviction that counts against McCarthan at *Bryant* step four. So we are left to decide whether two or more of McCarthan's three remaining convictions count against him at *Bryant* step four.

We first review McCarthan's two 1988 Georgia convictions for possession of cocaine. Under the ACCA, an enhancement is applicable only when a defendant was previously convicted of three ACCA-qualifying offenses that were "committed on occasions different from one another." 18 U.S.C. § 924(e). At sentencing, the government is required to show that "the three previous convictions arose out of a separate and distinct criminal episode." *United States v. Proch*, 637 F.3d 1262, 1265 (11th Cir. 2011). On appeal, we review *de novo* whether crimes were committed on different occasions within the meaning of the ACCA. *United States v. Weeks*, 711 F.3d 1255, 1261 (11th Cir.) *cert. denied*, __ U.S. __, 134 S. Ct. 311 (2013).

30

The crux of the ACCA separate-occasions inquiry focuses on whether a defendant "had a meaningful opportunity to desist his activity [after one offense] before committing the [next] offense." *United States v. Pope*, 132 F.3d 684, 690 (11th Cir. 1998). If so, the two offenses are separate offenses for purposes of imposing an ACCA enhancement; if not, the two offenses count as only a single predicate ACCA offense. *Id.* In practice, this means that "so long as predicate crimes are successive rather than simultaneous, they constitute separate criminal episodes for purposes of the ACCA." *Id.* at 692. "Distinctions in time and place are usually sufficient to separate criminal episodes from one another even when the gaps are small." *Id.* at 690.

Thus, we have held that prior convictions were separate ACCA offenses where a defendant committed two burglaries in "immediate succession by breaking into and robbing two offices that were 200 yards apart from one another," *id.* at 689, 692; where a defendant committed two burglary offenses "on the same day at separate addresses on the same street," *Proch*, 637 F.3d at 1265; and where a defendant burgled a credit union and, minutes later, broke into a storage shed in the course of fleeing from the police, *United States v. Lee*, 208 F.3d 1306, 1307 (11th Cir. 2000).

Applying similar separate-occasions tests, our sister circuits have held that two offenses are separate under the ACCA where a defendant robbed the same

31

clerk at the same convenience store twice within a two-hour period, *United States v. Washington*, 898 F.2d 439, 442 (5th Cir. 1990); where a defendant and his accomplice committed armed robbery at a beauty shop and, thirty minutes later, committed a second armed robbery at a nearby bar using the same weapon, *United States v. Brady*, 988 F.2d 664, 666 (6th Cir. 1993); and where a defendant burgled a cake shop and, approximately five to ten minutes later, committed aggravated battery by pushing a policeman to the ground three blocks from the cake shop, *United States v. Schieman*, 894 F.2d 909, 910 (7th Cir. 1990). In sum, even slight temporal and geographical gaps between the conduct giving rise to prior convictions will dictate that those convictions be considered separate predicate offenses under the ACCA.

In conducting our ACCA separate-occasions inquiry, we may look to only the statutory definitions of the offenses, the charging document, any written plea agreement, any transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented. *Shepard v. United States*, 544 U.S. 13, 16, 125 S. Ct. 1254 (2005). Here, no state-court *Shepard* documents exist for us to rely on to determine whether McCarthan's Georgia convictions qualify as separate ACCA predicate convictions.

Because McCarthan did not object to the court's adoption of the facts in the PSR, we must consider the facts in the PSR in evaluating whether McCarthan's

1988 Georgia convictions occurred on separate occasions. *See, e.g.*, *United States v. Beckles*, 565 F.3d 832, 844 (11th Cir. 2009) ("Facts contained in a PSI are undisputed and deemed to have been admitted unless a party objects to them before the sentencing court with specificity and clarity." (internal quotation marks omitted)); *United States v. Wade*, 458 F.3d 1273, 1277 (11th Cir. 2006) ("It is the law of this circuit that a failure to object to allegations of fact in a PSI admits those facts for sentencing purposes.").

Here, the criminal-history section of the PSR lists McCarthan's two 1988 Georgia convictions for possession of cocaine with intent to distribute. Neither party disputes that, in this Circuit, possession of cocaine with intent to distribute is an ACCA predicate conviction. *United States v. James*, 430 F.3d 1150, 1155 (11th Cir. 2005). Instead, the only issue is whether the two convictions occurred on separate occasions such that they count as two ACCA predicate convictions.

From the PSR, we can glean that both convictions were obtained in Fulton County, Georgia. And, for both convictions, the PSR provides that, "[o]n March 9, 1988 [sic] the defendant possessed cocaine with the intent to distribute the substance." Despite the facial similarity of description, the two convictions are listed as separate convictions and assigned separate criminal-history points for purposes of tallying McCarthan's criminal-history score—the probation officer assigned two points for the first conviction and three points for the second

33

conviction—for a total of five points between the two convictions.  Nor did McCarthan object.  These circumstances are dispositive of our separate-occasions inquiry.

The Sentencing Guidelines used for McCarthan's 2004 sentencing (the 2003 Sentencing Guidelines) provided that a defendant's "[p]rior sentences imposed in *unrelated* cases [were] to be counted separately," whereas a defendant's "[p]rior sentences imposed in *related* cases [were] to be treated as one sentence."  U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(a)(2) (U.S. SENTENCING COMM'N 2003) (emphases added).  In the Sentencing Commission's commentary, the Commission defined "related cases" as follows:

> 3.    <u>Related Cases</u>.  Prior sentences are not considered related if they were for offenses that were separated by an intervening arrest (<u>i.e.</u>, the defendant is arrested for the first offense prior to committing the second offense).  Otherwise, prior sentences are considered related if they resulted from offenses that (A) occurred on the same occasion, (B) were part of a single common scheme or plan, or (C) were consolidated for trial or sentencing.

*Id.* § 4A1.2 cmt. n. 3.  So, by not objecting to the PSR, McCarthan acknowledged that his two 1988 Georgia convictions for possession of cocaine with intent to distribute did not "occur[] on the same occasion" and that they were not "part of a single common scheme or plan."  *Id.*

34

Given this admission, we cannot conceive of how McCarthan's two Georgia convictions could be considered a single ACCA predicate offense. Because they did not "occur on the same occasion," *id.*, they necessarily must have occurred successively rather than simultaneously. And the fact that the two crimes were not part of a single common scheme or plan indicates that McCarthan had a "meaningful opportunity to desist" between committing the two crimes, and that there were "[d]istinctions in time and place" between the two offenses "sufficient to separate [the] criminal episodes from one another." *Id.* at 690. In these circumstances, we are bound by our precedent and McCarthan's admission to conclude that McCarthan's 1988 Georgia convictions are separate ACCA predicate offenses.[11]

---

[11] We note that the same sort of analysis would not hold water with respect to PSRs drafted under the current Sentencing Guidelines. The current Sentencing Guidelines are stripped of any reference to "related cases." U.S. SENTENCING GUIDELINES MANUAL § 4A1.2(a)(2) (U.S. SENTENCING COMM'N 2014). Instead, the Guidelines provide as follows:

> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or treated as a single sentence. Prior sentences always are counted separately if the sentences were imposed for offenses that were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence.

*Id.* Under the current Guidelines, then, whether sentences are treated as a single sentence or multiple sentences sheds no light on whether the underlying offenses occurred on separate occasions for purposes of the ACCA.

A petitioner cannot successfully argue that two of his predicate ACCA offenses occurred simultaneously rather than sequentially and without a meaningful gap between them—and therefore should have been counted as a single predicate offense under our caselaw—when he has already acknowledged that those same offenses did not occur on the same occasion and that they were not part of a single common scheme or plan.

In sum, we conclude, as we must, that McCarthan's two 1988 Georgia cocaine convictions were separate predicate ACCA offenses.  As a result, McCarthan does not meet *Bryant* step four.  Even after we disregard his 1992 Florida escape conviction as having been squarely foreclosed, and even if we assume that McCarthan's 1994 Florida third-degree murder conviction is not a violent felony under the ACCA, McCarthan still has three ACCA-qualifying convictions justifying his ACCA enhancement: his 1987 Florida possession-of-cocaine-with-intent-to-sell-or-deliver conviction and his two 1988 Georgia possession-of-cocaine-with-intent-to-distribute convictions.  For this reason, three qualifying convictions support McCarthan's ACCA enhancement, and McCarthan cannot satisfy *Bryant* step four.  *Bryant*, 738 F.3d at 1274.

By failing to demonstrate that he meets part four of the *Bryant* test, McCarthan has failed to establish jurisdiction under the savings clause in § 2255(e).  *Id.*  As a result, the district court correctly determined that it lacked

subject-matter jurisdiction to entertain McCarthan's § 2241 petition. *Williams v. Warden, Fed. Bureau of Prisons*, 713 F.3d 1332, 1337 (11th Cir. 2013), *cert. denied sub nom. Williams v. Hastings*, __ U.S. __, 135 S. Ct. 52 (2014).

## CONCLUSION

For the reasons stated above, we affirm the District Court's Order dismissing McCarthan's § 2241 petition for lack of jurisdiction.

**AFFIRMED.**

PROCTOR, District Judge, concurring:

I agree with the Majority's conclusion that the district court did not have jurisdiction to entertain McCarthan's habeas petition. In reaching this correct judgment, however, the Majority (in its otherwise well-written opinion) finds that McCarthan met the first step of the test adopted in Bryant v. Warden, FCC Coleman-Medium, 738 F.3d 1253 (11th Cir. 2013),[1] but failed to establish the fourth. On this single point I disagree and write separately to state why we should also conclude that McCarthan has not satisfied step one of Bryant.

Congress has enacted substantial limits on the jurisdiction of federal courts to hear federal prisoners' section 2241 petitions. As the Majority has acknowledged, section 2255's savings clause severely limits a federal court's subject-matter jurisdiction to entertain a federal prisoner's section 2241 habeas

---

[1] Although in considering whether McCarthan may open the portal for relief under 28 U.S.C. § 2241 I am duty-bound to apply the five-part test outlined in Bryant, I agree with Judge William Pryor's concurrence in Samak v. Warden, FCC Coleman-Medium, 766 F.3d 1271, (11th Cir. 2014) that the rule contrived in Bryant is indefensible as a matter of textual interpretation. Id. at 1275–95. Indeed, in my view, the cumbersome nature of that test leads to just the type of confusion we have here surrounding whether McCarthan has established the first requirement of the Bryant test. Without question, as currently constructed, steps one and four of Bryant overlap. That is, the clear language of step one requires a petitioner to show that the distinct conviction that is challenged is the one that triggered the application of section 924(e). And step four requires a showing that retroactive application of a new Supreme Court rule results in a current sentence exceeding the 10-year statutory maximum which Congress authorized in section 924(a). I understand the argument that my reading of Bryant's step one may render its inquiry at step four superfluous. But this reading of step one does nothing more (or less) than apply the precise language of Bryant. 738 F.3d at 1274. And, again, the confusion created by comparing steps one and four of Bryant serves as an example of why I believe Judge William Pryor's point in Samak is both well-reasoned and well-taken.

petition.  For a petitioner to establish jurisdiction, he must show that the remedy in

section 2255 "is inadequate or ineffective to test the legality of his detention."

Maj. Op. at 8–9 (quoting 28 U.S.C. § 2255(e)); see Williams, 713 F.3d at 1340.  In

Bryant, we established a five-step test[2] that district courts in our Circuit must apply

in determining what a petitioner like McCarthan must show in order to establish

application of section 2255's savings clause.  Id. at 1274 (synthesizing our

previous decisions in Wofford v. Scott, 177 F.3d 1236 (11th Cir. 1999), Gilbert v.

United States, 640 F.3d 1293 (11th Cir. 2011), and Williams v. Warden, 713 F.3d

1332 (11th Cir. 2013) in determining "what the statutory terms in § 2255(e)'s

savings clause mean and how to read § 2255(e) in a way that does not eviscerate or

undermine § 2255(h)'s restrictions on second or successive § 2255 motions but

also affords some meaning to the savings clause.").

---

[2] The Majority says that the test established in Bryant is "not some independent test that a petitioner must satisfy *in addition* to the requirement of § 2255(e) to show that the 'remedy by motion' is 'inadequate or ineffective' to test the legality of [the petitioner's] detention; rather, the purpose of each step of Bryant is to help us to determine when the 'remedy by motion' is 'inadequate or ineffective' to test the legality of [the petitioner's] detention."  Maj. Op. at 26 n.9 (emphasis in original) (citing Bryant 738 F.3d at 1274).  Presumably, the Majority believes this explanation navigates around the problem that the inquiries contained in steps one and four of Bryant are, to some degree, repetitive.  But the explanation ignores the point that the Bryant test was expressly formulated to explain how our Circuit interprets the language of the savings clause.  That is, Bryant explains how we must read that statutory provision and what a petitioner must show to establish that a prior habeas petition under section 2255 was "inadequate or ineffective to test the legality of his detention."  Here, the Majority's reasoning on this point is circular:  we must look to the Bryant test to understand what the language and requirements of the statute are (i.e., what a petitioner must show to take advantage of the savings clause); but we must look back to the statute's language to understand what the Bryant test means.  At best, that explanation is like the snake eating its tail.  Moreover, the explanation acknowledges that, on some level, the language of section 2255(e) is either in conflict with Bryant, or inconsistent with its test.  Of course, I agree.  The Bryant test is itself an incorrect (or, at best, incomplete) textual interpretation.

Turning to the plain language Bryant's first step, McCarthan is required to show that "throughout his sentencing, direct appeal, and first § 2255 proceeding, our Circuit's binding precedent had specifically addressed [his] distinct prior state conviction that triggered § 924(e) and had squarely foreclosed [his] § 924(e) claim that he was erroneously sentenced above the 10-year statutory maximum penalty in § 924(a)." Bryant, 738 F.3d at 1274. The Majority reads this language to contain a restrictive clause modifying the term "binding precedent." I disagree. Although this language from Bryant does indeed contain a restrictive clause, that restrictive clause -- "that triggered § 924(e)" -- restricts (that is, defines) the term "distinct prior state conviction." In other words, the clause "that triggered § 924(e)" defines which "distinct prior state conviction" must be specifically addressed by our precedent. A fair reading of this language does not permit us to say that the term "distinct prior state conviction" is itself restrictive. It follows that in order to satisfy step one of Bryant, a petitioner must point to a "distinct prior state conviction" that our Court's binding precedent had specifically addressed, and that our binding precedent had foreclosed an earlier assertion that the "distinct prior state conviction" at issue was improperly counted as a section 924(e) predicate conviction.[3]

---

[3] The Majority's analysis of step one completely fails to even reference this "trigger" language. (Maj. Op. at 14–21). The failure to mention the "trigger" language is a significant omission from the Majority Opinion's discussion of step one of Bryant.

40

It is obviously of no moment if the distinct prior state conviction challenged is only one of many (here, at the time of sentencing, five, and, at present, no less than three) ACCA predicate convictions that would themselves support the enhancement. In such an instance, correcting any error with respect to the counting of that distinct challenged conviction would not change the ACCA calculus. And that is precisely the situation McCarthan faces here. By force of law and logic, his escape conviction could not have been the distinct conviction that triggered section 924(e)'s application (and I use the clause "that triggered section 924(e)'s application" in a restrictive sense) because there were, and continue to be, at least three other convictions that support application of the enhancement.

Again, the Majority's response to this reading of the Bryant test does nothing more than point out that step one and four are repetitive. I am in complete agreement. This only supports a conclusion that the test announced in Bryant is both clumsy and indefensible as a matter of textual interpretation.

I have no dispute with the Majority's conclusions that (1) standing in a vacuum, McCarthan's escape conviction was erroneously counted and, (2) at the time he was sentenced, any argument that his escape was not a violent felony was squarely foreclosed by our binding Circuit precedent. That is, McCarthan has satisfied part (yet only part) of Bryant's first step. But that is not enough for him

41

to meet the first element of <u>Bryant</u>.  I would conclude that to satisfy <u>Bryant</u>'s step one McCarthan was required to show, among other things, that the escape conviction he now challenges is <u>the</u> distinct conviction that triggered the section 924(e) enhancement.  On this record, it is clear that it was not.

In all other respects, I join in my colleague's Majority well-reasoned opinion.